No. 394

First Circuit

HAYES v. NETHERLANDS INS. CO. OF THE HAGUE, HOLLAND

(February 13, 1929.  Opinion and Decree.)
(April 13, 1929.  Rehearing Refused.)

Taylor and Parker, of Baton Rouge, attorneys for plaintiff, appellant.

John W. Lewis, of Opelousas, attorney for defendant, appellee.

MOUTON, J.  Plaintiff, John F. Hayes, took out a fire insurance policy with defendant company through its local agent, Sachse Company, of Baton Rouge, to cover his dwelling and household furniture for a period of three years from April 1, 1926.

He alleges that the property so covered by the policy was destroyed by fire on or about October 23, 1927.  His suit is to have the policy reformed and to recover from defendant company the sum of $1,400, face value of the policy, with 12 per cent as damages thereon, and $300 attorney's fees.

His demand was rejected.  He appeals.

The vital issue presented here is whether there was a meeting of the minds of plaintiff and defendant in reference to the property insured.  The general and accepted rule in such cases is that, if the minds of the insured and insurer have met, and the policy, as written, does not express their mutual intention, it may be reformed by a court of equity.  In other words, if the writing expresses without ambiguity the agreement as understood by one of the parties, but not by the other, there can be no reformation.  It is therefore obvious that the mistake must be mutual to au-

thorize the relief which equity grants to the policyholder in such cases.

The authorities cited by counsel for plaintiff and defendant are in harmony with the doctrine outlined in the foregoing statement, which has been recognized by the courts of the various states, including our own, and to which we do not find it necessary to refer specifically.

The whole question in the instant case resolves itself into one of fact, which is, whether the policy of insurance expresses the mutual understanding of the parties in reference to the property insured.

The dwelling or home of defendant is numbered "309 Maryland Street," and is situated outside of the corporate limits of the city of Baton Rouge. It is shown that Mrs. V. A. Sachse, manager of the Sachse Insurance Agency, local agent of defendant company, issued in 1925, an insurance policy to plaintiff covering his residence and furniture located on Maryland Street outside the corporate limits of the city of Baton Rouge. She had occasion, as the record shows, to see the property several times in her vain efforts to collect from plaintiff the premium on the policy she had issued to him, and she inspected the premises.

Plaintiff, it is shown, failed to pay the premium on that policy, which was in consequence canceled about one month after its issuance. Plaintiff says that in February, 1926, he went to the Sachse office in Baton Rouge, walked in and told Mrs. Sachse he wanted to take out an insurance policy on his house; that she said "all right," and that he went out. This is denied by Mrs. Sachse in her testimony.

Plaintiff wanted money from the Commercial Securities Company of Baton Rouge, which he could not get without having his home insured.

On the 1st of April, 1926, he says, he called at the office of the Sachse agency to get fire insurance on his property. His residence at 309 Maryland Street, situated on the outskirts of the city, the record shows, is all the property he owned. There can be no doubt that this was the property he wanted to have insured, as he had no interest whatsoever in any other. That fact is well established by the record.

Plaintiff, on April 1, 1926, as before stated, applied at the Sachse office for the policy. He called on Mr. Smullin, the office man of the company, for the insurance. Smullin says he got his tab or writing tablet, and asked what building it was that he desired to have assured. He took his memorandum tablet to make a note on it, asked plaintiff how much insurance he wanted, on what kind of building, etc., and says plaintiff gave him his address, 1058 South Boulevard. Smullin says that 1058 South Boulevard is the location of the building that plaintiff gave him, and, by referring to the Sanborn map, which is consulted by all insurance companies, the correctness of the location was confirmed. He is certain, he says, that nothing was mentioned in that conversation about any building applicant owned at 309 Maryland Street. He says, he knew that plaintiff had obtained a former policy which he believes was written when he first went into the office, but had no reason to go to it, and did not have it in mind at the time. He did not know the applicant, and the latter did not know Smullin, had never seen him before, as appears from the record. He testifies that he did not get any information, in issuing the policy, from Mrs. Sachse or anybody else in the office. All that he had to go by was what plaintiff, the negro applicant, told him. He

says the negro said that he had told him where to send the policy, but that he did not "recall that."

He testifies, however, that he had sent it to the Commercial Securities Company. He was asked about the loss payable clause in the policy, and whether the negro had requested him to put that clause in it. His answer was that he did not recall where that information came from, but said thereafter in his testimony that he remembered plaintiff had told him about the mortgage clause, that he had borrowed the money from the Commercial Securities Company. He says the assured was his only source of information.

The foregoing includes a full statement from Smullin's testimony in reference to what was said between him and plaintiff when the contract of insurance was entered into, and which was written by Smullin.

The beginning of the policy reads as follows:

"On the one story composition roof frame building * * * while occupied by assured as a dwelling and situated as follows: No. 1058 South Boulevard, Street 37, Block 2, street etc."

Plaintiff testifies that he applied to Mr. Smullin for his policy. He says, he walked into the office and said to Mr. Smullin, "I came to pay the premium on John F. Hayes' policy"; that Mr. Smullin said all right, that the premium was $31.50, for which he gave him a receipt, and asked where he received his mail, to which he answered at "1058 South Boulevard." He explains that he gave his mail address at South Boulevard, because it is in the city limits where his mother-in-law lives, and they have daily mail delivery, which is not the case on Maryland Street outside the corporate limits, where his residence

is situated. According to the testimony of the plaintiff, the foregoing covers all that transpired in reference to what he said and was asked by Mr. Smullin. He is positive that no description of his property was asked by Smullin, who alone attended to the transaction. Plaintiff does not say anywhere, nor does he even intimate, that he told Mr. Smullin that he was occupying the dwelling, that it had a composition roof, or that it was located on Maryland Street. If he had intended to frame up a story against the insurance company, he would doubtless have testified that he had given information to Mr. Smullin on those subjects as a prerequisite to the confection of the contract. Instead of doing so he confines his testimony to the statement to which we have hereinabove referred. It is certain from plaintiff's evidence that Mr. Smullin never got from him the information that he was occupying the building as a dwelling, and that it was covered with a composition roof. It is equally certain from what was testified to by Mr. Smullin that he never obtained that information from what the negro told him.

Therefore the question arises: Where did Mr. Smullin get this information? We say, where did he get it, because he wrote the policy, and it is therein stated that the building is occupied by the insurer as a dwelling, and has a composition roof. Mr. Smullin is positive that plaintiff gave him 1058 South Boulevard as the location, and says that an examination of the Sanborn map confirmed the correctness of that location. It appears however from that map that the roof of the building there designated as 1058 South Boulevard has a shingle and not a composition roof. It would, therefore, have been impossible for him, by consulting that map, to have gotten the information which led him to put

in the insurance policy, a composition, instead of a shingle roof. Hence, it is obvious that the composition roof provided for in the policy had reference to another building, and that Smullin had obtained his information in reference thereto from some other source than from the map. He nowhere claims it was from plaintiff, and he cannot claim it was from the Sanborn map. Both positions would be equally untenable. Mr. Smullin had never visited plaintiff's residence, and had never met the negro at any time prior to his visit to the office for the policy. He must therefore have gotten the information, to which we have alluded, somewhere, or from somebody who had knowledge of those facts. The only source for the information could have been from the former policy of plaintiff's dwelling, which had been canceled, or from Mrs. Sachse, who had issued the first policy after frequent visits, and inspection of the premises. Mr. Smullin and other officers of the company say that the canceled policy has been lost. Let us say it was lost or could not be found after the fire, still the information it conveyed as to the character of the property could have been obtained by Mr. Smullin prior to that time, and before he wrote out the policy, although he disclaims that he had it in mind when he entered into the contract with plaintiff. He also disclaims that he received any information from Mrs. Sachse or anybody else connected with the office when he issued the policy. Mrs. Sachse testifies that she did not know until after the fire that the policy in question had ever been issued. She denies, as we have hereinabove stated, that plaintiff ever applied to her for the issuance of the present policy of April, 1926. She says, however, in reference to the policy of 1925, which she had issued after inspecting plaintiff's residence, that she gave the description to Mr. Smullin. It is therefore proved that Smullin, at that time, got a description of that property, which doubtless covered the building occupied as a dwelling by the assured, the plaintiff, and which had a composition roof, and which also gave the proper description 309 Maryland Street. That was the only source from which he could have derived such information, as he claims plaintiff did not give it when he issued the policy, and plaintiff does not contend that he tendered information of that character, as he says he limited himself to the giving of his mail address at 1058 South Boulevard. Mr. Smullin, no doubt, had the information to which we have referred, which accounts for the fact, according to plaintiff's testimony, that, when he applied to him for the policy, he required no written application, told him it was all right, and only asked him for his mail address, which was given as 1058 South Boulevard. Mr. Smullin doubtless relied on his prior information, and confined himself to the applicant's mail address. This is where the error crept into the policy. Instead of putting in the contract, 309 Maryland Street, which would have been the correct location for plaintiff's residence, 1058 South Boulevard was inserted through mistake. Both parties intended to insure plaintiff's dwelling, but Smullin having fallen into the error above stated, and the policy of insurance having been written by him, accounts for its failure to express the true contract in reference to the location of the building intended to be insured.

It must be also noted that the policy, before its issuance, was signed by Mrs. Sachse for the local agency. She says she did not read it before affixing her signature, and explains her failure to do so, on a custom which prevails with her, in many instances due to rush of business, etc.,

not to read the policies which are prepared by Mr. Smullin or other officers of her company. It is possible, and very probable, however, that, on seeing the policy was for John F. Hayes, whose dwelling she had inspected, and had good reasons to remember, she simply signed it without reading the contents. These policies are always prepared by these local agencies, do not require the signature of parties to whom they are issued, and should, in our opinion, be read before they are issued.

This rule should find additional force in a case like this, where the local agent was directed to prepare the policy and to mail it, not to plaintiff, but to the Commercial Securities Company. If Mrs. Sachse had read it before signing, the error of the proper location of plaintiff's residence would have been at once detected, and corrected. The defendant company through its local agent in this respect is additionally at fault.

In addition to what we have hereinabove said as to what caused the original error in the description of the property, it becomes appropriate to refer to the following notation in pencil on the back of the policy: "309 Maryland Street S. B. R." Mr. Smullin says he did not put this notation on the policy, and that it is not in his handwriting. A similar disclaimer is made by Mrs. Sachse. Mr. Morris, secretary-treasurer of the Commercial Securities Company, in whose possession the policy remained until the fire, says the notation is not his. Plaintiff is likewise positive that he had nothing to do with the notation. As the Commercial Securities Company had a mortgage on plaintiff's property, it may be said it had knowledge of its location from the description in the act: This could not have been so however, as such act would not give the number of the dwelling in which the mortgagee might reside. Such specific descriptions are found in policies of insurance, but not in acts of mortgages. It therefore may safely be said that the Commercial Securities Company had no knowledge that plaintiff's residence was numbered 309 Maryland Street, and that the notation on the back of the policy was not made by any officer or employee of that company.

Plaintiff, it is shown, received the policy the day after the fire, and had no interest, that we can see, why he should have made that notation. Besides, he frankly stated in his testimony that he had given Mr. Smullin 1058 South Boulevard as his address, and therefore could have no reason to insert a notation contrary to that location.

Someone, however, made that notation, and who had knowledge of the property that was being insured, or of the residence where plaintiff lived. We believe that Mr. Smullin had knowledge of that fact, that he relied upon what he knew in reference to this insurance when he wrote the policy, which accounts for the statement of the plaintiff, where he says Smullin merely asked him about his mail address, and nothing about the location of the property. Smullin intended to insure the dwelling on Maryland Street, but by inadvertence, error, or mistake inserted plaintiff's mail address, as descriptive of its location.

It may be asked if Smullin relied on the information he had obtained from the former policy, or from someone in the office, why did he not incorporate the location as being on Maryland Street. The answer is: He depended on the knowledge he previously had, and confined himself to asking plaintiff for his mail address, which he did not have, and this resulted in the error of location.

Plaintiff testifies that Mr. Smullin gave

him a receipt for $31.50, the amount of the premium for the policy. This receipt, plaintiff testifies, did not give the location of the property as being on South Boulevard. Smullin, and other witnesses for defendant company, say that these receipts so given to policyholders were on printed forms which carry the location of the premises insured. Smullin does not remember, and does not say, that the receipt in question had the description of the property as given in the policy. No other witnesses for defendant say that such was the fact. The witnesses for defendant say also that the bills sent for the collection of the premiums embody a description of the property or its location. It seems however from their testimony that no bill had been sent to plaintiff for the premium, as the time had not yet arrived for such a notice. Such testimony fails to prove that plaintiff had been apprised of the location contended for by defendant, opposed as this is by the positive denial of plaintiff.

Counsel for defendant refers us to R. C. L. vol. 14, p. 903, where it is said:

"To warrant a reformation the evidence must be clear and convincing."

This rule is almost universally recognized in cases of this character. Bearing this doctrine in mind, we have carefully considered the evidence in this record. The facts and circumstances, taken in connection with the testimony, show clearly and convincingly that both plaintiff and defendant, when the contract was entered into, had in mind the insurance of plaintiff's dwelling on Maryland Street, and that, by mistake, the erroneous description of 1058 South Boulevard found its way into the policy.

This opinion is perhaps unpardonably lengthy, but which the writer considered necessary, so as to give a full analysis of the facts before ordering a reformation of the policy. Plaintiff is entitled to that relief and to the recovery of the $1,400, face value of the policy for the total destruction of the premises and furniture insured, also $300, for the professional services of plaintiff's attorneys established by the record.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be avoided, annulled, and reversed; it is further ordered and decreed that the policy of insurance, issued to plaintiff by defendant herein, be, and is hereby, corrected so as to read: "And situated as follows, 309 Maryland Street," instead of "No. 1058 South Boulevard, Street 37, block 2," as now appears in said policy; and, it is further adjudged and decreed that plaintiff have judgment against defendant in the sum of $1,400 with 5 per cent per annum interest from October 23, 1927, the date of the destruction of the property covered by the policy, until paid; and that plaintiff have judgment for $300 as attorney's fees, with all cost of court.