No. 3546

Second Circuit

(Second Division)

OWENS v. OWENS ET AL.

(June 11, 1931. Opinion and Decree.)

S. R. Thomas, of Natchitoches, attorney for plaintiff, appellee.

Rusca & Cunningham, of Natchitoches, attorneys for defendants, appellants.

TALIAFERRO, J. This is a suit to reform an authentic act of sale of land by correcting the description therein given, alleged to be erroneous.

Plaintiff alleges that in keeping with an agreement to take effect, entered into in the year 1907, he purchased from defendant Barney O. Owens, on February 4, 1912, lot No. 4 of section 18, township 6 N., R. 4 west, in the parish of Natchitoches for the price of $200, but through error the deed evidencing the transfer of said land described same as being west half of said lot 4; that at date of said deed, said lot was in his physical possession and had remained so continuously since; that he has cleared portions thereof and improved it so that its value is $2,000; that some seven or eight years prior to filing this suit, said Barney O. Owens became angered at him, and, discovering the error in said deed, on January 23, 1923, purported to

sell to his son, Otto Owens, defendant herein, the east half of said lot, which was the portion of land previously sold petitioner, erroneously omitted from his deed; that his dwelling house is located on said east half of said lot, having been built there at the suggestion of the said Barney O. Owens in the year 1907; that said Otto Owens is a party interposed to assist said Barney O. Owens in his fraudulent plan to deprive petitioner of said property, and the said purported transfer between them was and is a subterfuge, the price thereof being only $100, whereas the property described is worth $1,500; that he intended to buy, and said Barney O. Owens intended to sell him, all of said lot 4.

Plaintiff further alleges:

"That the said Otto Owens did not purchase said property, that both he and his father Barney O. Owens, were in bad faith in the matter and that the said purported transfer was and is fraudulent to the knowledge of both the said Barney O. Owens and the said Otto Owens."

"Your petitioner shows that notwithstanding the said purported transfer was made by Barney O. Owens to Otto Owens on January 25, 1923, that neither of said parties has ever notified your petitioner thereof, and that your petitioner only learned of said fraudulent and purported transfer on or about October 3, 1928."

The prayer of the petition is for judgment correcting and reforming the description in the deed from Barney O. Owens unto petitioner so that the same will read: "Lot 4 of Section 18, Township 6 N., R. 4 West," and he be decreed the owner thereof; that the purported transfer from Barney O. Owens unto Otto Owens be declared null and of no effect, and be erased from the records.

The answer of Barney O. Owens in the main is a general denial. He further says that he owned lands in section 18, which he offered to sell to plaintiff, which was wild and unimproved, and worth very little in such state; that, plaintiff being unable to purchase the land, respondent permitted him to clear a part of it, with the understanding that he might have free use thereof, provided he would clear and put in cultivation additional lands from time to time; that several days prior to the execution of said deed plaintiff and he discussed the sale of this and other land owned by respondent; that plaintiff desired to purchase the W. ½ of lot 4 of section 18, but respondent at first declined to sell same to him, for the reason that portion of the lot was the better, being high, sandy land, and, should he do so, the balance of his property might be rendered valueless, but, being assured by respondent that he was unable to purchase more of said land, respondent finally agreed to sell him the west half of said lot 4, and the sale was consummated the following day before the clerk of court at Natchitoches; that plaintiff bought the land described in said deed, and that only. He admits that he sold the east half of lot 4 to his son, Otto Owens, and specially denies that plaintiff intended to buy same, and that he did not pay for it, and never, prior to filing this suit, asserted claim thereto.

The answer of Otto Owens, in substance, is practically the same as that of his co-defendant. He avers that on February 9, 1920, he purchased from Barney O. Owens the S. E. ¼ of S. E. ¼, sec. 18, town. 6 N., R. 4 west, and prior to that date he was living on said 40-acre tract; that on January 25, 1923, he purchased from said Barney O. Owens the east half of lot 4, adjoining above-described tract, and that he went into possession of that part of lot 4 not in possession of plaintiff, but that he was uncertain as to the location of the

true boundary lines of said lot; that any part of E. ½ of said lot in plaintiff's possession was due to his ignorance of the correct boundary lines thereof.

This defendant further avers that he purchased said land from his father, Barney O. Owens, in good faith and on faith of the public records, after having an abstract of the title made and procuring a mortgage certificate showing it to be unincumbered, and paid a fair price therefor.

There was judgment for plaintiff as prayed for. Defendants appealed.

The parties to this controversy, and many of the witnesses, are related. The usual amount of contradictory evidence and cross-swearing, characteristic of such affairs, appears in the record.

Defendant Barney O. Owens, contradicting his answer, admits that in 1907 he had an agreement with plaintiff to the effect that plaintiff was to move on his lands in section 18, "build, clear and work the land, until he was able to buy it and pay for it," and that ne agreed to make a deed whenever he was able to pay for it; that west half of lot 4 was the land mentioned.

It is established that in 1907 this defendant and plaintiff, accompanied by a mutual friend, went over lot 4, and in a general way located some of its boundary lines, and that at this time defendant suggested to plaintiff that he build his home, where he did build it, in south end of the east half of the lot, and where he lived continuously until this suit was filed. It is also shown that then and there this defendant stated that he had agreed to sell plaintiff 40 acres for $200. Plaintiff commenced to clear land in 1914, and by 1923 had 18 acres open, of which 16 acres were on the east half of the lot and 2 acres on the

west half of it. The value of the east half of the lot in 1923 was fixed by plaintiff at $1,500 and by defendant at $15 or $20 per acre. Defendant states that he did not know the east half of the lot was in cultivation in 1923, but had an idea it was. He lived very close to it. Several witnesses, many of whom cannot be accused of being interested to any extent, testify that Barney O. Owens stated to them or in their hearing that he had sold 40 acres of land to plaintiff. One witness stated that this defendant told him that plaintiff was honest in thinking he bought 40 acres of land, and that he (defendant) was honest in thinking he had sold plaintiff this acreage; that they both thought the west half of lot 4 contained 40 acres. It is also shown that this defendant stated that, if plaintiff did not withdraw some criminal charges he had made against two of the Owens boys, the piece of land would be taken away from him.

At the date of deed to plaintiff Barney O. Owens owned the following described tracts of land in Natchitoches parish, contiguous, viz.: Lot 4 of section 18, containing 40 acres; S. E. ¼ of S. E. ¼, section 18, containing 40 acres; lot 5 of section 17, containing 51½ acres; township 6 N., R. 4 west, aggregating 131.50 acres.

He states that on the day he executed deed to plaintiff he went to the assessor's office and had his assessment changed for the succeeding year. For the years 1909 to 1912, inclusive, he was assessed with 131.50 acres, and for succeeding years to and including 1920 he is assessed with 91.50 acres described as being E. ½ of lot 4, Sec. 18, and lot 5 of Sec. 17, Town. 6 N., R. 4. For the years 1921, 1922 and 1923 he is assessed with 71 acres, being lot 5, Sec. 17, and E. ½ of lot 4, Sec. 18, 6—4, with some slight variations, while for

the years 1924 to 1928 he is assessed with lot 5 of section 17, containing 51 acres. From 1912 to 1928 plaintiff is assessed with 40 acres, described, in almost every instance, as W. ½ of lot 4 of section 18, T. 6 N., R. 4 W.

Plaintiff's contention is that he thought lot 4 of section 18 embraced 80 acres. There is considerable evidence in the record to indicate that defendant Barney O. Owens also thought so. An analysis of his assessments after 1912 lends force to this thought. In adjusting his assessment, after making deed to plaintiff, he instructed the assessor, evidently to reduce his acreage by 40, and for 1913 he is assessed with lot 5 of section 17, and east part of lot 4 of section 18, the acreage being given, at 91.50.

The evidence as a whole leaves no doubt in our mind that plaintiff intended to buy, and defendant intended to sell, 40 acres of land, and that this tract was to contain plaintiff's improvements and cleared land, where he had lived since 1907. We are also convinced that both parties were under the impression that lot 4 of section 18 not only embraced what in reality was lot 4, according to the official plat, but also S. E. ¼ of S. E. ¼ of section 18. In not one of defendant's assessments is the S. E. ¼ of S. E. ¼, section 18, given; only the lots are described. The evidence also convinces us that plaintiff intended to buy from Barney O. Owens, and that he intended to sell to plaintiff, the west 40 of the land in section 18, and that land, according to the evidence, is designated on the plat book as lot No. 4.

Actions to correct and reform erroneous descriptions in deeds will be maintained by the courts when the evidence shows clearly the error complained of. However,

relief against such errors will not be granted when, by doing so, the rights of bona fide third parties will be prejudiced. No inflexible rule can be laid down as to what is good or bad faith in such matters. Every case, largely, must depend upon its own merits. Waller v. Colvin, 151 La. 765, 92 So. 328; Bender v. Chew, 129 La. 850, 56 So. 1023; Adams v. Drews, 110 La. 456, 34 So. 602; Gladdish v. Godchaux, 46 La. Ann. 1574, 16 So. 451.

A deed of record is controlling, except in cases of circumvention, fraud, and bad faith. Bender v. Chew, 129 La. 856, 56 So. 1023.

In Waller v. Colvin, supra it is said:

"In a suit to reform a deed, testimony that those claiming under the deed had been in actual possession of the land claimed since its date during a period of over 20 years openly, publicly, and without disturbance of any kind from adverse claims, was most convincing proof of an intent to convey such land."

Plaintiff herein has been in possession of practically all of east half of lot 4 of section 18 for many years prior to the deed thereto from Barney O. Owens unto Otto Owens. He had a large clearing on it in 1923, and continued to clear more land, sell timber therefrom, and in all respects exercise undisturbed control and dominion over same, almost in sight of both defendants, to the filing of this suit in October, 1928. Otto Owens lived on S. E. ¼ of S. E. ¼, section 18, adjacent to east half of lot 4 of that section; yet he denies that he knew that any part of the latter was cleared or that plaintiff lived on it, though admitting he did know that plaintiff erected a house thereon in 1907. He stated that he had no idea what the east half of this lot was worth, but afterwards admitted

it was worth at least $15 per acre, but that he purchased it for $5 per acre. In many material respects he contradicted himself, was evasive, and professed ignorance of facts, all the circumstances indicate unmistakably, he must have possessed knowledge of. In his answer he avers that he purchased this property from his father in good faith, after securing an abstract of title thereto and a mortgage certificate. It is shown he did not accompany his father to Natchitoches when the deed was executed, and that he did not sign same. He admits he did not take these precautions when he purchased the S. E. ¼ of S. E. ¼, Sec. 18, from his father. When deed was executed to him, his brother, Dewitt, represented him and paid the price of the sale in cash, $100. They had the clerk of court count the money in order that no mistake could be made. This was, to say the least, a suspicious transaction between father and son.

The testimony in this case discloses a multitude of circumstances, so suspicious and unusual in their nature, and unexplained, as to make the conclusion irresistible that there was concert of effort on part of defendants to fraudulently deprive plaintiff of the east half of lot 4 of section 18 which he had bought and paid for, and that defendant Otto Owens acted throughout the entire transaction in bad faith, knowing that the land did not legally belong to his father, Barney O. Owens. The judge of the lower court, who is acquainted with all the parties involved, and who saw and heard the witnesses at trial, reached these conclusions. His judgment should not be disturbed, unless obviously wrong.

For the reasons assigned, the judgment appealed from is affirmed, with costs.