### BROWN et al. v. SIRACUSA et al.
### No. 1286.

Court of Appeal of Louisiana. First Circuit.
Jan. 22, 1934.

Chas. E. Fernandez, of Franklin, for appellants.

C. A. Blanchard, of Morgan City, for appellees.

MOUTON, Judge.

This suit is to correct an alleged error in a deed of sale and to have it reformed according to the contract which plaintiff avers was entered into between the parties thereto.

Fraud and error are alleged by plaintiffs. These allegations are sufficient. The exception of no cause of action filed by defendant was properly overruled.

### Merits.

In 1880, Delphine Radler Stevenson bought from Robert Lawrence a lot of ground containing 2½ acres situated in the village of Greenwood, St. Mary parish, La.

In 1891, she sold a portion of this tract of land to the Pilgrim Grove Church with a right of way 16 feet wide facing the railroad tract.

In 1910, she sold to Welman Brown, husband of her daughter, Savannah Brown, plaintiff herein, a portion of this lot of ground, having a width of 40 feet by a depth of 100 feet. Brown, instead of fencing in a lot of 40 feet in width and 100 in depth in accordance with his title, fenced in a tract of 58 feet wide by 140 deep.

This property, including the two lots sold, as aforesaid, was inherited by plaintiff, the sole heir of Delphine Radler Stevenson.

John Siracusa, defendant herein, having purchased this property from parties who were not the owners, plaintiff Savannah Brown employed Mr. Walter T. Gilmore, attorney at law of St. Mary, to recover the land from Siracusa. Mr. Gilmore was successful and received from Savannah Brown one-half the land for his fee.

After plaintiff had recovered the property, it was sold by her to defendant Siracusa for $1,500; Mr. Gilmore joining in the deed to ratify the sale.

After alleging that Mr. Gilmore was a part owner of the property, plaintiff avers that he is made a codefendant to have all parties before the court who attempted to convey title to the land to defendant Siracusa. Mr. Gilmore is now eliminated from the case as a codefendant, the issues submitted for decision being restricted between Savannah Brown, plaintiff, and John Siracusa, defendant.

The act of sale by which plaintiff sold to defendant was prepared by Mr. Gilmore in his office and was sent to Mr. Himel, notary public, by whom it was authenticated.

As hereinabove explained, Welman Brown,

husband of plaintiff, had fenced in 58 feet in width and 140 in depth of the land, instead of 40 in width and 100 deep to which he was entitled under his title from Delphine Radler Stevenson, his mother-in-law. He had therefore taken 18 feet of land on the width and 40 in the depth, beyond the limits fixed in his title.

The complaint of the plaintiff is that when she sold the property, it was agreed between her and defendant Siracusa that the sale was to be from "fence to fence," as the fences stood at the time of the execution of the deed. If a stipulation to that effect had been inserted in the deed, it would necessarily have secured to her 18 feet on the front of the property and 40 in the rear in excess of that which had been conveyed to Welman Brown, her husband, by her mother, Delphine Stevenson.

Plaintiff contends, also, that it was agreed between her and defendant that a shelled right of way on the side of the property was to be reserved in the sale for the benefit of the lot deeded to Welman Brown by her mother, which her husband had later sold to Mr. Greenwood, and where plaintiff, with her husband, was living at the time of this transaction.

Her complaint is that the sale was not made to defendant from "fence to fence" as agreed so as to include the 18 and 40 feet to which we have referred, and that it also failed to make the reservation of the shelled right of way, above mentioned.

This act of sale was passed in the office of Mr. Gilmore on December 27, 1930, and had been preceded by a conference on the night of December 26, 1930, held at the home of plaintiff, where defendant and others were present.

In the act of sale executed December 27, 1930, the property is not sold from "fence to fence," which would have included the reservation of the 18 and 50 feet of ground, nor was there any reservation of a shelled right of way which plaintiff claims should have been inserted in the deed.

In the deed, however, the lot which had been sold to the Pilgrim Grove Church in 1891 by the mother of plaintiff, also the lot 40 by 100 deeded to Welman Brown in 1910, by plaintiff's mother, are excluded in the sale made by plaintiff to defendant, executed December 27, 1930, in Mr. Gilmore's office.

This suit was instituted to have that sale of December 27, 1930, reformed, so as to include the reservations of the land from "fence to fence" and also the shelled right of way which plaintiff contends if so reformed would comply with the conditions contained in the agreement she entered into with defendant Siracusa for the sale of her property.

Plaintiff testifies that on December 26th, the night prior to the execution of the deed, Clarence Cross, John Thomas, and her husband, Welman Brown, were present at the conference she held with defendant in reference to the sale. Her testimony is that at this interview, she told the defendant she would sell the property for $1,500, provided the sale was from "fence to fence"; that she would reserve the land inside the fence and a shelled road or right of way that ran along the side of the property.

Clarence Cross does not say he was present at that conference, but testifies that he was sent by defendant to plaintiff to talk to her about purchasing the land; that he saw plaintiff, who told him to tell defendant she would sell from "fence to fence, with a right of way," which, we take, as having reference to the shelled road.

John Thomas, who plaintiff says was at the conference the night before the sale, testifies that he was present. His testimony is that plaintiff agreed to sell the land she had inherited from her mother and made no reservations of the land from "fence to fence," and that there was then no discussion about a right of way but which was discussed the next day at Mr. Gilmore's office, and it was then the first time he heard the subject mentioned.

The defendant says plaintiff agreed at the conference to sell him all the property for $1,500, that she made no reference of any reservations of the land included from "fence to fence," and none as to the shelled right of way about which the agreement was made, and which was inserted in the deed when it was written by Mr. Gilmore at his office the next day.

Welman Brown, plaintiff's husband, testifies that the reservations of the land from fence to fence and the right of way were agreed to at that conference, where he was present.

Plaintiff and Welman Brown, her husband, who were at the conference, claim that these reservations were to be inserted in the sale, which is denied by John Thomas and defendant, who state that no such reservations were mentioned or agreed to.

The only other witness who testified in reference to what preceded the conference was Clarence Cross, who said plaintiff had told him to say to defendant that she wanted to make these reservations.

In the deed executed by Mr. Gilmore, December 27th, there is no reservation of the shelled road, but simply of a space of 10 feet along the property for the passage of autos and wagons. This provision in the act of sale seems to indicate that no reservation of the shelled right of way had been reserved at the conference.

John Thomas says there was no discussion at the conference in reference to a res-

ervation of a right of way, but that this came up the next day at Mr. Gilmore's office.

Mr. Greenwood, a witness to the sale, says, after it was read, the stipulation for the right of way was put in the deed. Hence, it would seem that Mr. Greenwood's testimony, on this point, confirms the statement made by John Thomas that this agreement on this subject came up when the sale was passed and not before at the conference.

Plaintiff testifies that she told Mr. Gilmore that she would sell the property to defendant, "reserving in my yard from fence to fence."

Clarence Cross, witness to the sale, says he heard plaintiff say to Mr. Gilmore, "I want you to understand I am selling this property to Mr. Siracusa from fence to fence."

Mr. Gilmore testifies that the information he got regarding the transfer of the property was obtained from plaintiff and defendant. He does say that there was some talk about the reservation of the land within the fences for plaintiff herein, and that it was to be reserved.

In the sale, as we have hereinabove stated, the property sold to the Pilgrim Grove Church, with the 16-foot right of way adjoining it, also the lot 40 by 100 sold to Welman Brown, had been excluded from the sale.

Mr. Gilmore was asked if he had been instructed to include in the sale any stipulations in reference to these reservations claimed by plaintiff. His answer to that question is as follows: "None, than what is there," meaning in the sale in question.

The only reservation in the deed is in reference to the church property and the lot sold to Welman Brown, and of the 10-foot right of way inserted in the deed after it was read, according to the testimony of Mr. Greenwood, and about which there is no dispute in this litigation.

If it be true that plaintiff instructed Mr. Gilmore, as testified to by her and the two witnesses, above named, to insert the reservations as to the land between the fences and the shelled right of way, as the deed shows there was no such reservations, the only conclusion possible to reach would be that Mr. Gilmore deliberately kept out these reservations. There are no facts or circumstances reflected in this record indicating that Mr. Gilmore had any interest whatsoever in suppressing such reservations from the sale. It is shown that after the sale was written, it was read by Mr. Gilmore, and that no objections were made or protests urged to the deed as written, and which was signed by plaintiff, Mr. Gilmore, as vendor, and by the witnesses. Nothing in fact was said or done that could be construed as suggestive of any error in the sale or of any fraud resorted to in completing the transaction. If Mr. Gil-

more refrained from inserting in the sale the reservations although instructed or requested to do so by plaintiff, he was not guilty of error, but of a fraudulent act; but there is nothing in this record suggestive of any motive of interest or of any other character that could have induced him to indulge in such deception towards plaintiff.

Counsel in alluding to the testimony of Mr. Gilmore refers to him in his brief as an ex district judge of the parish of St. Mary, now one of its representatives, as a man possessed of an unquestionable and envious reputation.

It is impossible to believe that a man of that reputation would have been guilty of such a reprehensible and fraudulent act and of which he is certainly not charged by counsel for plaintiff, from whom he has received the encomiums, above referred to.

If, as claimed by plaintiff and her witnesses, Mr. Gilmore was requested or instructed to make these reservations and failed to insert them in the deed, such failure could not be characterized as being due to any error on his part. It would simply have been the result of a deliberate purpose to deceive the plaintiff for the benefit of defendant, her vendee. An act of fraud which plaintiff does not in the remotest manner charge Mr. Gilmore of having committed. Hence, there could have been no error or fraud in the preparation of the sale in question by Mr. Gilmore, as is alleged in plaintiff's petition, the basis of her complaint in which she is asking to have the sale reformed.

In connection with our analysis of the testimony of Mr. Gilmore, above given, it is appropriate to consider what occurred several months after the execution of the sale, in December, 1930.

We have reference to the fact that defendant had, according to plaintiff's testimony, one Blackwell to plow the shelled right of way and had also removed some outhouses from the land which had been enclosed within the fences built by Welman Brown.

Plaintiff testifies that after the plowing of this shelled right of way and the removal of these buildings, she saw Mr. Gilmore, her lawyer, in Morgan City, and consulted him on this subject. She says Mr. Gilmore said: "John had no business to plow up the right of way, I will write to him concerning that. I said many thanks and I came home." At the time she consulted Mr. Gilmore about the plowing of this shelled road, she testifies that defendant had previously, in December, soon after the sale, plowed the entire tract.

Mr. Gilmore testifies that when plaintiff consulted him on April 17th, she complained only about the right of way. In a letter dated April 17th, Mr. Gilmore wrote defendant that he had no right to plow the right of way 10 feet wide which had been especially provided for in the sale. Although

she also testifies that after the buildings had been taken down she had consulted Mr. Gilmore, there is not a word in that letter from Mr. Gilmore to defendant of any such complaint on the part of the plaintiff. If she had also urged such a complaint, it is not believable that Mr. Gilmore would not have made, in his letter to defendant, some reference thereto. The fact is that Mr. Gilmore knew all about the title to the property which he had recovered for plaintiff, had prepared the sale by which plaintiff sold to defendant, and if any reservation had been made of the land from "fence to fence" and from which the buildings had been removed, doubtless he would have written to defendant that he was violating the conditions of the contract, which had been agreed to at the time of the execution of the sale.

The testimony of Mr. Gilmore and his letter to defendant show that the complaint of the plaintiff when she consulted him was in reference to the plowing of the right of way which had been provided for in the sale; and, we think, that plaintiff, as she first said, complained to him on that subject and not upon the removal of the buildings and the plowing of the "entire tract." This was her interpretation of the sale and of Mr. Gilmore, and which was in accordance with the provisions of the contract.

In a letter dated July 21, 1931, Mr. Fernandez, attorney for plaintiff in this suit, wrote to defendant that Welman Brown and his wife (plaintiff) now complain that he had plowed the right of way of 10 feet which he had planted in potatoes; that this right of way had been reserved in the sale from plaintiff to defendant; and that if he failed to place it in the condition it was before he commenced to cultivate it, plaintiff would resort to a writ of injunction to protect her rights. In another letter of July 29, 1931, Mr. Fernandez makes a similar complaint on the part of plaintiff, and again specifically refers to the "10 foot" right of way provided for in the act of sale. Still later, August 6, 1931, he writes again to defendant in which he says plaintiff will permit him to harvest his potato crop which was growing on this right of way, if he consented to cancel a judgment for $50 which defendant had obtained against Welman Brown, husband of the plaintiff.

These letters were written by Mr. Fernandez long after the shelled road had been plowed and the buildings had been removed. No doubt, the information he received on this subject was from plaintiff and her husband, Welman Brown. If plaintiff then believed that her rights had also been violated because of the removal of these buildings which she contends were on the strip of land from "fence to fence," and which, she says, had been reserved by her, it is inconceivable that she would not have included that in her consultations with her attorney, as the recovery of this portion of the lot of ground constitutes the gravamen of her complaint in these proceedings. If she had also complained to Mr. Fernandez about the land from "fence to fence" which she says had been reserved in her agreement to sell, unquestionably counsel would have included that in his letters to defendant. No doubt, it must have been at some time later that plaintiff enlarged her complaints and, upon being so informed, her counsel instituted this suit.

 In a suit to reform a written instrument, the rule is that "evidence to warrant a reformation, must be clear and convincing." Hayes v. Netherlands Ins. Co., 10 La. App. 612, 120 So. 218; White v. Myane, 10 La. App. 195, 120 So. 650; Jouban v. Mayer, 9 La. App. 413, 119 So. 549.

The evidence in this record is far from being either clear or convincing that the reservations claimed by plaintiff were left out of the sale in question. The evidence is at least conflicting, and in such a case, the act must be taken as correct. Jouban v. Mayer, 9 La. App. 413, 119 So. 549.

The court below, in a carefully prepared opinion, found that plaintiff had failed to make out her case so as to entitle her to a reformation of the sale, as is demanded in her suit.

We find no error in the judgment appealed from, which is therefore affirmed, with cost.