DORE, Judge.
Plaintiff alleges that he is the owner and in the actual physical possession of.eighty acres of land, more or less, in Washington Parish; that Shelby Booty is the owner of a 67 acre tract of land lying east of and contiguous to his eighty acre tract; that his tract of land and the Shelby Booty tract of land were both at one time owned by one William R. Miller, as the .common author in title, and that on March 28, 1898, the said Miller sold to B. B. Dees a tract of land of 160 acres, of which the 80 acres of land now owned by him was a part thereof, and in said transfer to Dees, the said Miller fixed and determined the eastern boundary of the tract sold to Dees “as a conditional line commencing at north Township line where a certain drean crosses said line, and from thence down said drean to Little Silver Creek,” and said conditional line was established and recognized as said drain by the purchaser, Dees; that subsequent to the transfer by said Miller to said Dees of the aforesaid tract of land, said Miller sold and conveyed to one James Bamber the tract of land now owned by said Shelby Booty, and in said deed, .the said Miller gave as the western boundary of the land therein sold, the land of B. B. Dees, thereby recognizing and fixing the eastern boundary of the tract owned by him and the western boundary of the tract owned by Shelby Booty as the conditional line referred to in the deed from Miller to Dees, and which said line has been recognized as said drain by the various predecessors in title of himself and such Shelby Booty; that he had erected a fence on said line several years ago and has occupied and possessed the land up to said fence and drain without any disturbance or protest on the part of Shelby Booty and his authors in title.
*381 Plaintiff further alleges that on October 30, 1930, Alvin Booty, who was then the owner of the 67 acre tract now owned by S'helby Booty, executed a mortgage on said tract of land in which mortgage the western boundary of the tract was erroneously described as a line dividing the west half and the east half of Headright #40 Tp. 2 S. R. 9 East, instead of describing said tract as being bound on the west by lands of petitioner and the said established conditional line; he further alleges that he subsequently acquired, in due course, the note of said Alvin Booty secured by the mortgage on said 67 acre tract of land and foreclosed said mortgage, and under said foreclosure, the land with the erroneous description was sold -by the sheriff to one John L. Fortenberry on January 2, 1940, and a deed by the sheriff to said Fortenberry was executed, and in this deed, the same erroneous description was given as was contained in the act of mortgage relative to the western boundary of said tract of land.
Plaintiff further alleges that the said For-tenberry sold and conveyed the said 67 acre tract of land to Shelby Booty and Nesby Booty on January 29, 1940, and on November 21, 1941, by act of partition between Shelby and Nesby Booty, the said Shelby acquired the 67 acre tract of land; that in the said deeds the description of the western boundary of said tract ’of land was erroneously given and continued as the dividing line of said Headright #40, whereas, the said Shelby Booty well knew that the correct line on the west was the established conditional line running from the township line down a well defined and well recognized drain to Little Silver ’Creek.
Plaintiff further alleges that in so far as he knows, no line dividing the east half and the west half of Headright #40 has ever been fixed and established, and if so fixed and established, whether it would correspond to the conditional line heretofore fixed and established iby the common author in title, which said conditional line has been recognized by prior owners of the two tracts as the dividing line of the said two tracts.
Plaintiff further alleges that Shelby Booty has recently undertaken to have a line run dividing the said Headright #40, which purported dividing line runs a considerable distance west of the conditional line fixed and recognized by the prior owners of the two tracts thereby encroaching on his land so as to include, some fifteen acres of his land; that said Shelby Booty is claiming to own this overlapping area, which constitutes a cloud on his title.
The purpose of the suit is to have the error in the deeds through which Shelby Booty claims, corrected, and the correct boundary fixed as the conditional line, and that the said Shelby Booty be required to desist from claiming ownership of said strip of land. The suit is brought against Alvin Booty, the person who placed the mortgage on the property, John L. Fortenberry, the purchaser at the sheriff’s sale, Nesby Booty, who at one time owned an undivided one-half interest in the property, Shelby Booty, the present owner, and the sheriff of Washington Parish.
The defendants Alvin Booty, Shelby Booty, Nesby Booty and John L. Forten-berry, answered. In their answer, they deny that plaintiff is the owner of and in possession of the property described in his petition ; they admit that Shelby Booty is the owner of a 67 acre tract of land in the northeast corner of Headright #40, said tract of land being bounded on the north and east by the north and east line of said Headright, on the South by Little Silver Creek, and on the west by the line dividing the west half and the east half of said Headright; they deny that the property owned by plaintiff and the tract owned by Shelby Booty were owned by a common author in title and that the common author in title fixed the boundary between the two tracts; they deny that plaintiff erected any fence on the alleged line. They admit execution of a mortgage on the property now owned by Shelby Booty by said Alvin Booty, the acquisition of the mortgage note by plaintiff, the foreclosure and sale of the property by the sheriff, the acquisition of the said property by Fortenberry and the acts of transfer set out in the petition. They specifically deny any error in the description of the property relative to the western boundary of the property, claiming that the *382 western boundary of said property of Shelby Booty’s property was a line dividing the east half and the' west half of Head-right #40. They specifically set out that the plaintiff recognized the correctness of the western boundary of the Shelby Booty’s tract of land by an instrument executed between himself, Shelby Booty and Nesby Booty, on December 30, 1939, by his acquiring the note and mortgage and by foreclosing the mortgage, thereby estopping him from contending that the description of the Booty tract to be erroneous. They further plead the prescription of ten and thirty years.
Defendant sheriff, in his answer, admits the sale of the property by him as sheriff, and denies all of plaintiff’s allegations for lack of sufficient information.
Thereafter, defendant Shelby Booty filed .an exception of no right or cause of action, ■and also a plea of estoppel. These were overruled. The exception of no right or •cause of action is abandoned.
Thereafter, defendant Shelby Booty filed ¡pleas of prescription of two years under Article 3543 of the Revised Civil Code and of five years under Act 6 of 1928. The plea •of prescription of two years was overruled ■and the plea of prescription of five years was referred to the merits.
The trial of the case on the merits resulted in a judgment, with written reasons assigned therefor, in favor of plaintiff as •prayed for. Defendant Shel'by Booty has ■appealed.
The record discloses that both plaintiff and defendant deraign their respective 'title from one W. R. Miller. On March 28, 1898, the said Miller sold to B. B. Dees a tract of land containing “one hundred and :sixty acres, more or less and lying in the "William D. Smith Headright — Tp. 1 & 2, R. '9, E. St. Hel. Med. lying North of Little Silver Creek, bounded north by lands of Hester Tate and I. W. Westmoreland, East by lands of I. W. Westmoreland and ike Brumfield, South by Little Silver Creek and west by Little Silver Creek, and Allen Dykes, with conditional live (line) on the .East as follows: Commencing at North at Township line where a certain drean crosses said line and from thence down said drean to Little Silver Creek, and being same land acquired by vendor from J. H. Schillery.” It is from this sale that plaintiff deraigns his title. On August 29, 1898, some five months after the sale by Miller to Dees, the said W. R. Miller sold to Jas. Bamber, a certain tract of land containing “one hundred ácres, more or less,” and described as follows: “Bounded North by lands of Isaac Brumfield, East by lands of J. M. Breland, South by Little Silver Creek and West by lands B. B. Dees, eighty acres of said land being in the Wm. D. Smith Head-right — Tp. 2 S.R. 9 E and Twenty acres being the S% of S.W. % of S.E. % sec. 33 Tp. 1 S.R. 9 E. St. Hel. Med. and being same land acquired by vendor from I. W. Westmoreland on 30th of March 1898.” It is from this sale that defendant Shelby Booty deraigns his title. From a mere perusal of these two deeds, it is easily seen that although these parties deraign their title from W. R. Miller, yet it cannot be said that they deraign their title from a common author nor that it can be said that the description fixing the eastern boundary of plaintiff’s property and the western boundary of defendant’s property to be one made by a common author, in that when Miller sold the property to Dees, he was not then the owner of the property which he subsequently sold to Jas. Bamber, he, Miller, having acquired the property some two days after the sale to Dees. In other words, it appears to us that this is not a case wherein a man owns a large tract of land and sells a portion to a party, and in the deed, he definitely sets a conditional line separating the part sold from the residue of his land, and later on sells the remainder or a portion to another party. In that case, we would say that the latter party would be bound by the conditional line of boundary. (Emphasis ours).
On December 14, 1898, Dees sold to Isaiah Tate the east half of the tract of land he had purchased from Miller and the eastern boundary is given as the “lands of James Bamber, I. W. Westmoreland and Hester Brumfield” and “the conditional line on the West to begin at Silver Creek, at mouth of drean, thence up the drean to *383 head. Thence, North to the Headright line.” (Emphasis ours).
On January 3, 1902, Isaiah Tate sold to Ollie Brumfield the eighty acres he had acquired from Dees and the eastern boundary is given as the “lands of Harve Me. Elveen (Me. Elveen having acquired from James Bamber) and J. W. Westmoreland and Isaac Brumfield * * * and West by lands of Leslie W. Crawford the conditional line on the West to begin at Silver Creek at mouth of drean, thence up the stream to head, Thence north to the Head-right line.” (Emphasis ours).
On February 3, 1920, Ollie Brumfield sold to Herbert Brumfield the 80 acres he had acquired from Isaiah Tate and the eastern boundary is given as the “lands of Bernice Booty (formerly Harve Me. Elveen) I. W. Westmoreland and Eli Miller (formerly Isaac Brumfield) * * *, west by lands of estate of Allen Deykes (Formerly L. W. Crawford) the conditional line on the west to begin at the creek at the mouth of a certain drean, then run up stream to head of same and thence run north to Headright Line.”
On June 14, 1924, the property was sold by the Sheriff of Washington Parish for the unpaid taxes of 1923 under an assessment in the name of Herbert Brumfield to O. H. Carter and being described as: “80 acres land described as follows: East by Eli Miller, * * *.” On September 2, 1929, O. H. Carter sold the property under the same description as he had acquired it, to Delos R. Johnson. It is noted that no mention is made of the conditional line in these two sales. (Emphasis ours).
On September 28, 1929, the present plaintiff acquired from Delos R. Johnson: “Eighty (80) acres of land, more or less, in the Wm. D. Smith Headright #48, Township 1, and No. 40, Township 2 South, Range 9 East St. Helena Meridian, bounded North by lands of I. W. Westmoreland and Hester Tate; East by lands of Bernice Booty (formerly lands of Harve Me. El-reen), I. W. Westmoreland and Eli Miller (formerly Isaac Brumfield) ; South by Little Silver Creek; West by lands of estate of Allen Dykes (formerly L. W. Crawford); the conditional line on the west to-begin at the creek, at the mouth of a certain drean; thence run up drean to head' of same and thence run north to Headright Line.” (Emphasis ours). The description therein given is the same description as-used by plaintiff in his petition.
The defendant Shelby Booty’s title from James Bamber is as follows:
On November 9, 1900, James Bamber sold to H. N. Me. Elveen the same property he had acquired from W. R. Miller and under the same description as heretofore given. On December 23, 1902, Me. Elveen-. sold to Mrs. C. P. Roberts the property he-had -acquired from Bamber under the same-description, save that the western boundary was described as “by lands of Ollie Brum-field and L. W. Crawford.” On January 20, 1903, Mrs. Roberts sold to A. J. Roberts-80 acres of the land which she had purchased from Me. Elveen, the western boundary being given as “by lands of Ollie-Brumfield and myself.” On November 11,. 1905, the said A. J. Roberts sold to Bernice-M. Booty, the land he had purchased from Mrs. Roberts, and the western boundary was given as “by lands of Ollie Brumfield' and Allan Dykes.”
On September 20, 1919, the said Bernice-M. Booty mortgaged to the Federal Land Bank of New Orleans: “67 acres in the northeast corner of Headright No. 40,. Township 2 South, Range 9 East, bounded! North and East by the North and East line-of said Headright, South by Little Silver-Creek and West by line dividing the west half and East half of said Headright” and! other properties not involved in this litigation. This appears to be the land the said Booty had acquired from A. J. Roberts,, supra.
On January 14, 1922, the said Booty sold to Alvin Booty, subject to the mortgage of the Federal Land Bank, the said 67 acres in the northeast corner of Headright No. 40,. without giving any bounds. On October 30, 1930, Alvin Booty mortgaged the 67 acres to B. M. Booty under the following description “67 acres in the northeast corner of Headright No. 40, Township 2 South, Range 9 East, bounded north and east by *384 the North and East line of said Headright; south by Little Silver Creek and West by line dividing the West and East half of said Headright.” This deed likewise contained other tracts of land not involved in this litigation.
On October 18, 1939, plaintiff in this case, alleging that 'he was the holder and owner of the note secured by the mortgage given by said Alvin Booty to B. M. Booty, foreclosed the said mortgage, the property ■being described as in the act of mortgage. At the foreclosure sale, on December 30, 1939, plaintiff in foreclosure and plaintiff in this suit purchased the property under the description as given in the mortgage. On January 29, 1940, on plaintiffs request, the sheriff executed the deed to John L. Fortenberry. Thereafter, on January 29, 1940, the said Fortenberry sold the property under the same description which he acquired it, to Shelby and Nesby Booty. On November 21, 1941, under an act of partition between Shelby Booty and Nesby Booty, Shelby Booty became the owner of the said 67 acre tract, the property being described as being bounded “north and east by the north and east line of Headright, South by Little Silver Creek and West by line dividing the west half and east half of said Headright.”
It appears that on December 30, 1939, the day of sale of the property under foreclosure, plaintiff had been the adjudicatee at said sale but the Sheriff did not execute a formal act of acquisition; on that day, the plaintiff entered into a written contract with Shelby Booty and Nesby Booty, wherein he agreed, for a valuable consideration, to sell to the said Shelby and Nesby Booty the properties under foreclosure, and in the said contract one of the parcels of land is described as being “67 acres in the northeast corner of Headright No. 40, Township 2 South, Range 9 East, bounded north and east by the north and east line of said Headright, South by Little Silver Creek and West by line dividing the West 'half and East half of said Headright.” In this contract, there is mentioned that plaintiff was to retain the standing timber thereon for the sum of $200.00, and he was to be given the right to remove the timber within five years. On January 29, 1940, plaintiff, after receiving the sum of $500.00 from John L. Fortenberry, then notified the Sheriff for the Parish of Washington to make title to said Fortenberry. The return on the writ of seizure and sale shows that after the deduction of costs, the retaining of $511.00 by Fortenberry to satisfy the Federal Land Bank mortgage, Fortenberry paid the sum of $3.10, which was received by plaintiff.
The evidence further shows that prior to and at the time of the aforesaid Sheriff sale, the plaintiff, his attorney, Shelby and Nesby Booty and Fortenberry were all present and were all cognizant of the description of the property as contained in the mortgage and advertisement and that the Sheriff read the description of the property to be and finally sold.
According to a plat of survey by Frank Foil, C. E., there are three drains or gullies leading north from Little Silver Creek, the first leading from the said Little Silver Creek to the west of the line dividing the east half and the west half of Headright #40, the dividing line being slightly to the east of the east line of Headright #48, and the remaining two drains are east of the said dividing line. It is the contention of plaintiff that the drain mentioned in the Dees sale is the first drain to the east of the said dividing line, and not the one just or near to the west of said line.
Although plaintiff classifies his action as one of reformation of deeds affecting the description of the property of defendant relative to the west boundary of his property, it strikes us that the action is more in the nature of one in boundary, in that if the lower court’s judgment is correct, the boundary line between the two tracts will be determined.
In this Court, the defendant, S'helby Booty, urges the pleas (1) of estoppel and (2) of prescription of two and five years, and has abandoned his plea of prescription of ten and thirty years.
We shall consider these pleas in reversed order.
Article 3543 of the Revised Civil Code provides: “Any and all informalities of le *385 gal procedure connected with or growing out of any sale at public auction of real or personal property made by any sheriff of the parishes of this State, * * '*, shall be prescribed against by those claiming under such sale after the lapse of two years from the time of making said sale, *' *
We .cannot see the applicability of the plea of prescription of two years as provided for under this article in that the prescription therein provided has to do with informalities of legal procedure and no such question is presented in this case.
Section One of Act 6 of 1928 provides:
“All sheriffs’ deeds shall be good and valid, by prescription, five (S) years from their date where the original owner of the property knew that the sheriff was proceeding to sell his said'property, and where the said purchaser, or those claiming under him, went into possession under such deed to the knowledge of the owner of the property and remained in the actual, open, and peaceable possession as owner for five (5) years, and where the purchaser paid consideration for said property which was then paid over by the sheriff to the creditors of the real owner of the property; * ' * * ; and provided further, that this prescription shall not apply to any attempted sale of property, not belonging to the defendant in execution. ■ * * *" (Emphasis ours).
The prescription provided herein is inapplicable to this case for at least three reasons: In the first place, the evidence does not satisfactorily show that the purchaser or those claiming under him went into possession of the disputed property and remained in the actual, open, and peaceable possession as owner for five years; unless it be held that possession of a part, under a deed translative of property, is possession of the whole; in the second place, it is not shown that the proceeds of the sheriff’s sale of this disputed property was paid over to the creditors of the real owner of this disputed property; and last, but not least, under the last provision of the act the prescriptive period is expressly excluded to property not belonging to the defendant in execution, the very purpose of this suit being to declare that the disputed property did not belong to Alvin Booty at the time of execution. : •
We therefore find no merits in the plea of prescription and the same is overruled.
As to the contention of the defendant Shelby Booty that plaintiff, by his actions in the foreclosure proceedings' as detailed above, is estopped from contending that his, defendant’s, western bound is a line dividing the east and west half of Headright #40, we find merit in that contention, but due to the conclusion we have reached, on the merits of the case, we fee.l it unnecessary to discuss and pass upon it..
On the question of reformation of the several deeds, the burden is on the plaintiff to prove the error alleged. This, he has failed to do.
As can be seen by the boundaries given in the ‘ chain of title of defendant Booty, the western' boundary, up to the' mortgage given by Bernice M. Booty to the Federal Land Bank of New Orleans, has always been given as the property of Dees or his assigns, without any mention of any conditional line. Likewise, the eastern boundary of plaintiff’s property has always' been given as thé property of I. W. Westmoreland or his assigns, without any mention of a conditional line definitely established.’’ Furthermore, according to plaintiff’s deed of acquisition, this, conditional line is on the west of his property.
Furthermore, as previously stated; the mortgage sought to be reformed was executed by Alvin Booty to B. Mi' Booty. There is not a scintilla of evidence in the record which goes to show that the parties to the- act did not intend that the western boundary of the Booty tract was not the dividing line as set forth in the act. ' To the' contrary, the presumption lies that the'parties intended the said dividing line to be the western boundary of the tract' of land in that B. M. Booty had granted a mortgage to the Federal Land Bank, giving the western boundary as such line, which said mortgage was outstanding and which Alvin Booty had assumed in his act of purchase under the same description.
Furthermore, the testimony of Forten-berry, Nesby Booty and Shelby Booty is to *386 the effect that they purchased the property relying upon the description as given in the mortgage, notice of sale, the offering at sale, the final adjudication and the subsequent acts. There is nothing in this record to show that they were acting in bad faith or had any knowledge of any error or misdescription of the property. It is our conviction that they were in good faith in their purchase and transaction in the matter.
It must be remembered that plaintiff not only stood by and did nothing towards informing anyone of any error in the description of the property, while Fortenberry acquired the sixty-seven acres with the western boundary thereof being given as the line dividing the east and west 'half of Headright #40, but he was the one executing on the mortgage, forcing the sale thereof. He actually bid in the property and contracted to sell this sixty-seven acre tract with the western boundary as heretofore set out. He was present at the Sheriff’s sale when the description was read by the Sheriff. He bid in the property, and thereafter, ceded his bid to Fortenberry, receiving the sum of $500.00 from Forten-berry. It comes with poor grace from him to now say that there was any error in the description of the property.
 The reformation of a contract or instrument is based upon a mistake and the evidence must be clear and convincing to warrant the reformation. See Brown v. Siracusa, La.App., 152 So. 95; Owens v. Owens, 16 La.App. 588, 135 So. 87; Jouban v. Mayer, 9 La.App. 413, 119 So. 549; Waller v. Colvin, 151 La. 765, 92 So. 328; Hayes v. Netherlands Ins. Co., 10 La.App. 612, 120 So. 218. Suffice it to say, he has failed to bear the burden of proof, showing any error in the description of the property committed by the contracting parties in the execution of the mortgage.
Furthermore, granting for the mere sake of argument, that he has sustained the burden of proof, yet we are convinced that Fortenberry, Alvin Booty and Shelby Booty are bona fide third parties and it is now well settled that reformation of a deed because of erroneous description of land conveyed will not be granted, where prejudicial to rights of bona fide third parties.
The trial judge, in his reasons for judgment, admits that if defendant Shelby Booty had 'been misled to his prejudice, by believing when he purchased the property that he obtained the acreage in dispute, then plaintiff would be estopped and could be afforded no relief. However, he comes to the conclusion that Shelby Booty was not misled and was not prejudiced as a result of what he calls the erroneous description of the property. In that conclusion, we must disagree with him. The testimony of Fortenberry, Nesby Booty and Shelby Booty is to the effect that they purchased the property and relied upon the description as given. The mere fact that Shelby Booty stands to lose fifteen acres of the land as given in the description is sufficient to show prejudice.
Now as to plaintiff’s demand that the boundary between the two properties be determined to be the “conditional line commencing at north Township line where a certain drean crosses said line, and from thence down said drean to Little 'Silver Creek,” we note that plaintiff has alleged that the conditional line is on the west of his property and not on the east. In Article 1 of his petition, he states: “The conditional line on the west to begin at the creek at the mouth of a certain drean; thence run up drean to head of same and thence run north to Headright line.” This conditional line is so described in the deeds of Dees to Isaiah Tate, Tate to Ollie Brumfield, Ollie Brumfield to Herbert Brumfield and Delos Johnson to plaintiff.
Furthermore, as previously stated, there is shown to be three dreans (drains or creeks) leading from Little Silver Creek to the Headright line. Outside of plaintiff’s testimony, there is no evidence in the record to definitely establish which of the three drains is meant in the sale of Miller to Dees. It could be just as reasonable to .¿old that it was the first drain which is situated near and west of the line dividing the Eand W% of Headright #40 as the second drain as contended by the plaintiff.
*387 Furthermore, regardless of the fact that plaintiff has alleged that the said conditional line has been recognized 'by prior owners of the two tracts, the record is void of any such showing except plaintiff’s testimony that he went in possession of property up to the second drain. He has failed to show that defendant Shelby Booty or his predecessors in title ever recognized the said line as the division line between the two tracts.
Suffice it to say that we find ourselves unable to grant 'him this relief because the procedure to fix a boundary between two estates, as outlined by the Civil Code, has not been followed.
For these assigned reasons, the judgment appealed from is reversed, annulled and set aside, and it is now accordingly ordered that plaintiff’s suit be dismissed at his costs.