(104 So. 620)

No. 24980.

### BRODIE et al. v. ATLAS ASSUR. CO., Limited.

(April 27, 1925. Rehearing Denied May 25, 1925.)

*(Syllabus by Editorial Staff.)*

1. **Insurance** ☞ 143(5)—Reformation of policies for mutual mistake or fraud in issuing them, in name of one not sole owner of goods insured, held warranted.

Where applicants for insurance on stock of goods stated their common ownership thereof to insurer's agent, issuance of policies in name of one who was not sole owner was result of either mutual mistake or fraud on agent's part, warranting reformation of policy and recovery of owners' respective interests therein after destruction of goods by fire.

2. **Insurance** ☞ 143(3)—Policy accepted by insured, in erroneous belief that it conforms to contract will be reformed by court of equity.

Policy accepted by insured in erroneous belief that it conforms to contract made with insurer's agent will be reformed to conform therewith by court of equity.

3. **Insurance** ☞ 143(3)—When court will reform policy stated.

Court of equity will reform written insurance contract for accident, fraud, or mistake in reference to amount of insurance, term and duration of risk, property or interest covered, name of insured and ownership of property, but will deny reformation when misstatement of ownership was due to misrepresentation or concealment by insured, even if he acted in good faith.

4. **Insurance** ☞ 143(3)—Mutual mistake or mistake on one side and fraud on other necessary to justify reformation of policy.

To justify reformation of insurance contract, there must have been either mutual mistake or mistake on one side and fraud on the other.

Appeal from Twelfth Judicial District Court, Parish of Vernon; J. H. Boone, Judge.

Action by J. H. Brodie and others against the Atlas Assurance Company, Limited. From judgment of dismissal, plaintiffs appeal. Reversed and remanded.

Sidney I. Foster, of Leesville, for appellants.

J. S. Atkinson and Alex F. Smith, both of Shreveport, and C. E. Hardin, of Leesville, for appellee.

THOMPSON, J. The plaintiffs appeal from a judgment which dismissed their suit on an exception of no cause of action.

The suit is on two fire policies for $2,500 each, issued by the defendant company in the name of J. H. Brodie. The first policy is dated January 16, 1920, and covered a stock of groceries and feed kept in a certain designated store known as the J. S. Trotti store in the town of Leesville. The second policy is dated March 5, 1920, and covers the stock of groceries and feed as well as dry goods and notions which had been added to the stock after the issuance of the first policy.

On September 10, 1920, the stock of merchandise was destroyed by fire, and this suit is brought in the name of J. H. Brodie and his two sons, who were equally interested in the stock of goods, to have the policies reformed and to recover their respective interests therein, together with the statutory pen-

alty and reasonable attorney fees. The two policies are of the recognized standard form, and contain the usual provision that:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void * * * if the interest of the insured be other than unconditional and sole ownership."

As the policies on their face name J. H. Brodie as the insured, and as there is nothing written on the policies modifying or changing the above stipulation as to ownership, it is argued that the petition does not show any contract between the three plaintiffs and the defendant, and hence that there is no legal justification for what defendant claims in its brief the extraordinary relief of reformation.

It seems from the allegations of the petition that the mercantile business was owned by J. H. Brodie when the first policy was issued. His son, J. A. Brodie, was an employee in the store, and represented his father in taking out the said first policy. The agent with whom negotiations were being had asked if that was all the insurance that was wanted, and he was informed by the said J. A. Brodie that he and his brother, J. W. Brodie, were going into the business with their father; that they would increase the stock and would then want additional insurance. The two sons did acquire an interest in the business, putting in additional capital, and notified the agent of the fact, and that they wanted the additional insurance.

The second policy was accordingly issued and delivered to the plaintiffs, who paid the premium thereon. At the same time an indorsement slip permitting the additional insurance was attached to each of the policies by the agent.

It is alleged that a full and complete statement was made to the agent of the subject-matter of the ownership of the stock of merchandise and of the interest of the two brothers who had been admitted into the business with their father. It is also alleged that the plaintiffs received the policies in good faith, believing that they were regular in every respect as to form.

[1] Taking the allegations of the petition as true, there can be no doubt that the agent of the defendant company was fully informed of the nature of the ownership of the stock of goods on which he issued and delivered the policies, and, while the plaintiffs may not have expressly requested or demanded of the agent to issue the policies in the names of the father and sons, it was the plain duty of the agent to have done so.

The agent dealt with the sons who represented the joint interest of their father and themselves. It was the sons and not the father who applied for the additional insurance. They could have had no other object in view in advising the agent of their acquisition of an interest in the stock of goods than to put him in full possession of all the facts concerning the joint ownership so that the policies might be properly issued. The sons had the right to assume that the agent would issue the policies in accordance with the facts presented to him and as their interest appeared. The agent had no right, after being thus informed, to assume that the sons, in making the application, represented only their father.

There is no contention and can be none, under the facts as set out in the petition, but that a valid agreement and contract of insurance was entered into between the agent of the defendant company and J. A. Brodie, one of the sons. There was a complete meeting of the minds on the subject of the insurance and the ownership, and the policies were issued on said agreement.

The mistake and error committed was on the part of the agent in making out the policy in favor of the person in whose name the business had been formerly conducted, in-

stead of making it in the name of the three owners who alone made the application for the additional insurance. And the same mistake was made in not changing the first policy so as to make it conform to the agreement.

It is clear, therefore, that the contract of insurance as relates to the ownership of the property and the name of the insured does not embody the understanding and agreement made between the parties, and was therefore made in error by the agent and received in error by the plaintiffs. If not issued in error by the agent for defendant, then it necessarily follows that the agent deliberately and intentionally inserted the name of J. H. Brodie as the insured, when he knew that he was not the sole and unconditional owner of the property, with a view of invalidating the policy and thereby perpetrating a fraud upon the plaintiffs. We are inclined to consider the matter as an unintentional mistake on the part of the agent, rather than to assume that he deliberately perpetrated a fraud on the plaintiffs.

[2] It is well settled that, when a policy of insurance as issued does not conform to the contract which it purports to evidence, and the insured accepts the policy in the belief that it does conform to his contract, a court of equity will reform the instrument. Am. & Eng. Ency. of Law, vol. 16, p. 869.

[3] And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of the risk, the property or interest covered by the policy, or the name of the person insured and the ownership of the property, although reformation will be denied when the misstatement as to ownership was due to misrepresentation or concealment on the part of insured, even if he acted in good faith. Corpus Juris, vol. 26, p. 104.

And the rule has been recognized and adopted in this state. Davega & Co. v. Crescent Ins. Co., 7 La. Ann. 228; Arguimbau v. Germania Ins. Co., 106 La. 148, 30 So. 148.

In Gaudet v. North River Ins. Co., 156 La. 719, 101 So. 118, we said, quoting from syllabus:

"An insurance policy, which is not in accord with the contract which it purports to evidence, will be reformed by equity so as to conform to parties' intention."

[4] In order, however, to justify the reformation of an insurance contract there must have been either mutual mistake or mistake on one side and fraud on the other. The case under consideration comes within the ruling of the cited cases. If the facts alleged can be established on the trial, then clearly the plaintiffs have the right to reform the policies and to recover the amount thereof. If the plaintiffs applied for insurance on their stock of goods, stating their common ownership to the agent, and the agent agreed to issue the policies as requested, but instead of doing so issued them in the name of a person not the sole owner, then obviously there was either a mutual error and mistake or else fraud on the part of the agent.

There is no conflict in the views here expressed, and the Gaudet Case, cited supra.

In the Gaudet Case a building was insured on property which did not belong to insured, and the contention was made that the agent had been informed of the fact that the building was on leased ground and agreed to issue the policy notwithstanding that fact. The court very properly held that the evidence did not sustain plaintiff's contention, and that no mutual error, if error at all, had been committed. An examination of that case and a comparison of the facts with the allegations of the petition in this case will readily disclose the marked difference.

Nor does the case of Davega, also cited supra, militate in the least against our ruling in this case. In that case the court said:

"We do not doubt that a policy of insurance may be reformed, where it is demonstrated, by legal and exact evidence, that there has been a mistake in filling it up, which has violated the understanding of both parties. * * *

"There must be a distinct showing by clear and unequivocal allegations, * * * that there was before the policy was framed an agreement, a concurrence of the minds of the assured * * * and the underwriter to protect risks, which were afterwards, by the mistake or fraud of the underwriter, left out of the formal instrument."

That is precisely the situation presented here, if we correctly appreciate the allega-, tions of the petition. The plaintiffs as owners applied for insurance on particular property in a certain amount. The policy was issued in the amount and covering the risk, but, instead of putting in all three of the owners' names, the agent by mistake or fraud left out the names of two of the owners.

For the reasons assigned, the judgment appealed from is annulled and reversed, the exception of no cause of action is overruled, and the case is remanded to the district court to be proceeded with according to law. The costs of this appeal to be paid by defendant.

O'NIELL, C. J., concurs in the decree.