## MUSE v. METROPOLITAN LIFE INS. CO.
### No. 5926.

Court of Appeal of Louisiana.
Second Circuit.
April 28, 1939.

Rehearing Denied May 29, 1939.

Writ of Certiorari and Review Granted
July 14, 1939.

Judgment Affirmed by Supreme Court
Oct. 30, 1939.

as described in the policy: "The loss of one hand by severance at or above wrist joint; or loss of one foot by severance at. or above ankle-joint; or total and irrecoverable loss of sight of one eye."

According to the allegations of the petition, while said policy was in force, plaintiff while performing the duties of his employment, suffered serious accidental injury to his right hand when it became entangled in the gear of running machinery. The third and little fingers were completely torn from the hand. The thumb and the other two fingers were severed from the hand but for a narrow connection of skin. The flesh, muscles, ligaments and tissues of the hand were badly crushed, lacerated and bruised, and the bones thereof torn from their normal attachments, crushed and fractured. The thumb and the hanging fingers, by surgical operation, were saved, but it is averred that it was impossible to effect a normal union of the bones, or to properly replace either of the fingers or the thumb so that they or the hand could be restored to normal usefulness in whole or part; and it is further alleged that what remains of the hand "is nothing more than a mass of crushed, broken, fractured and dislocated bones surrounded by flesh, to which hangs a dislocated thumb and two dislocated fingers with the bones thereof crushed, dislocated and disconnected, and over which petitioner has no control whatever and which he cannot use for any purpose." Additional allegations descriptive of the hand's impaired condition are made to support the conclusion, also alleged, that plaintiff has suffered total loss of use of that member. Photographs of the injured hand, attached to and made part of the petition, weigh heavily in favor of this contention.

Defendant excepted to the petition on the ground that it did not disclose either a right or cause of action. The exception was sustained and the suit dismissed. Plaintiff prosecutes appeal.

James T. Shell, Jr., of Bastrop, for appellant.

Madison, Madison & Files, of Bastrop, for appellee.

TALIAFERRO, Judge.

Plaintiff, an employee of the Southern Kraft Corporation, was insured under a group accidental death and dismemberment policy issued by defendant to said employer, which provides for the payment to plaintiff of a definite sum of money in the event he should suffer, in the manner and

The primary issue tendered by the exception is clearly stated by plaintiff's counsel in his very lucid brief in this court, to-wit: "This case presents the concrete question of whether an insured, who, by accident, suffers a partial amputation of his hand, as a result of which his entire hand, and all portions thereof, is rendered totally worthless, will be allowed to recover under the terms of an accident insur-

ance policy covering the 'loss of one hand by severance at or above the wrist-joint'".

And upon this premise he submits the following propositions for our attention:

"(1) That the use of the word 'severance' in the policy provisions must be construed to mean the method by which the accident occurred, rather than the extent of the amputation, and that it was the loss of the use of the hand, as such, that was covered by the insurance.

"(2) That regardless of the result of a strict and literal construction of the policy, the true intent and purpose of the insurance was for indemnity against the loss of the use of the member, as such; and, that where, by actual severance, either in whole or in part, the entire use of a member is wholly and totally lost, a liberal construction in line with the logical intention should be applied and recovery allowed."

Appellant relies upon the following cases to sustain his position: Beber v. Brotherhood of Railroad Trainmen, 75 Neb. 183, 106 N.W. 168, 121 Am.St.Rep. 782; Sneck v. Travelers' Ins. Co., 156 N.Y. 669, 50 N. E. 1122; Id., 88 Hun. 94, 34 N.Y.S. 545; Moore v. Ætna Life Ins. Co., 75 Or. 47, 146 P. 151, L.R.A.1915D, 264, Ann.Cas. 1917B, 1005.

The phraseology of the policies involved in the last two cases, as regards the dismemberment features thereof, are materially different from those in the policy before us, and in substance and effect may be easily differentiated therefrom. The language of the policy in the Beber case, it seems to us, is in substance not unlike that in the present policy.

Apropos of a discussion of these cases, it is well here to note that the benefits of the quoted provisions of the policy in this case are to no extent dependent for their devolution upon the nature and extent of disability or lack of use of an injured member. Physical severance at the points named alone is controlling of that question.

In the Beber case, a decision turned upon the following stipulations of the policy, to-wit: "'Any member in good standing, suffering, by means of physical separation, either the loss of a hand at or above the wrist joint, or suffering the loss of a foot at or above the ankle joint, or suffering the loss of the sight of both eyes, shall be considered totally and permanently disabled and shall receive the full amount of his beneficiary certificate, but not otherwise.'" 75 Neb. 183, 106 N. W. 168, 121 Am.St.Rep. 782.

The insured suffered a serious injury to his left hand. It was not entirely amputated. The trial court and the supreme court both found that the ultimate effect of the injuries practically destroyed the usefulness of the hand. Notwithstanding this fact, the trial judge directed a verdict for the defendant and rendered judgment thereon accordingly. The court's action was predicated upon its opinion that no recovery could be had under the quoted parts of the policy unless it be proven that the entire hand was severed at or above the wrist joint. The supreme court, in reversing the lower court's ruling, said:

"That plaintiff's benefit certificate is a contract of insurance between him and the society is both apparent and conceded, and that his right to recover depends upon a construction of the contract as set forth in section 45 of the constitution is also conceded by both parties to the controversy. Eliminating from this section all points not applicable to the case at bar, it would read as follows: 'Any member in good standing suffering, by means of physical separation, the loss of a hand at or above the wrist joint shall be considered totally and permanently, disabled, and shall receive, upon sufficient and satisfactory proof of the same, the full amount of his beneficiary certificate, and not otherwise.' Now, the question to be determined is, what did the defendant company contract to insure against under the provisions of this by-law? Was it the severance of the entire hand at or above the wrist joint? or was it the entire loss of the use of the hand at or above the wrist joint by physical separation? If the only risk assumed by defendant was the amputation of the whole hand, then the learned trial court was fully justified in directing a verdict for defendant; but, if a fair and liberal interpretation of the contract most favorable to the insured can make it a risk which includes the total loss of the use of the hand by severance, then the question as to whether such loss is established by the evidence is properly one for the triers of such facts. If the officers of the society, who prepared the by-law in which the contract is set forth, have used ambiguous terms, the ambiguities must be interpreted in the manner most favorable to the insured. If, instead of stating in

plain and simple language the exact loss they intend to protect against, they propound riddles in a jargon of equivocal phrases, these riddles should be solved most favorably to him who has been the victim of such artifice. Interpreted in this spirit, can the by-law of the defendant be reasonably said to protect against the entire loss of the hand by physical separation, whether such loss be occasioned by amputation or by an injury by severance, which totally destroys the usefulness of such member?"

We are unable to concur in these reasons. The language of the policy in that case, so far as we are able to discern, is as free from ambiguity as is the language in the policy we are dealing with. The court read into the policy words, material in their effect, which the parties did not choose to employ. It said, "Was it the severance of the entire hand at or above the wrist joint? or was it the entire loss of the use of the hand at or above the wrist joint by physical separation," that was insured against? The court answered its own question by holding that it was the latter condition which was insured against. The policy does not so disclose.

The policy in the Sneck case [88 Hun. 94, 34 N.Y.S. 546], as revealed from the opinion, provided that "if loss by severance of one entire hand or foot" should result from bodily injury inflicted in the manner described in the policy, the insured would be due to receive certain monetary benefits. He experienced serious injury to one hand and sued to recover on the theory that he had suffered "the loss by severance of one entire hand." The testimony showed that the fingers and heads of all the metacarpal bones were cut off; that "a little over half the hand, speaking anatomically, is gone." What was left of the hand was useless as a hand. The court, in awarding plaintiff judgment in passing, said:

" 'For the purpose of upholding a contract of insurance, its provisions will be strictly construed as against the insurer. When its terms permit more than one construction, that will be adopted which supports its validity. It is only when no other is permissible by the language' used that a construction which works a forfeiture will be given to it.' Looking at this contract in the light of these rules, we think it is not unreasonable to hold that the understanding to indemnify the insur-

ed against 'loss by severance of one entire hand' has reference not alone to an injury which involves the loss or requires the amputation of the 'entire hand' in a strictly anatomical sense, but that the effect, as well as the extent, of the loss by severance is to be considered in determining whether, within the terms of the contract, the 'entire hand' is gone. To require the insured to submit to a strictly literal interpretation of the contract prepared for him by the insurer, without regard to the purpose of the contract or the understanding thereof by the parties, would be to hold that only in case of the severance of the entire hand in a most accurately anatomical or technical sense could the insured recover under this clause of the policy. We do not believe that such a conclusion is required in the present case. The term 'entire hand' is to be taken in its general acceptation and ordinary meaning."

We are in agreement with these cogent reasons for judgment. The construed dismemberment provisions of the policy did not restrict the right to recover benefits therein provided to cases wherein the hand was severed at or above the wrist joint.

The facts and the court's holding in the Moore case are tersely reflected from its syllabus, viz: "An accident policy, which binds insurer to pay a specified sum on insured suffering accidental injuries resulting in the 'loss of a hand' by removal at or above the wrist, makes insurer liable where insured was accidentally shot in the hand, necessitating amputation of the hand, except a part apparently worthless; the amputation beginning at the wrist."

The injury to plaintiff's hand in that case necessitated removal of all the bones of the hand at the wrist, except the metacarpal bone of the thumb. Defendant contended that no recovery could be had unless every part and portion of the hand below the wrist joint was removed. This contention was overruled. The court, in passing, said: "Substantially nothing remains of plaintiff's hand but a worse than useless fragment!"

■ When contractants have reduced their agreements to writing their mutual intents and purposes in so contracting are to be determined from the contents of the written instrument. R.C.C. art. 1945.

■ It is only where the language employed in the contract is indefinite or ambiguous or equivocal that a court of

justice is called upon to engage in the task by interpretation of determining the purpose and intent of the parties. Policies of insurance form no exception to these rules. The words and language used therein should be given their usual, customary and ordinary meaning. R.C.C. art. 1946. Barry v. La. Ins. Co., 12 Mart.,O.S., 493; Brooks v. La. Ins. Co., 5 Mart.,N.S., 530.

In this connection, we quote the following extremely lucid statements from R.C.L. Vol. 14, pages 926–932: "While in some early cases it was said that insurance policies should be very liberally construed to effect the intention of the parties, in accordance with the general rule that in case of doubt a contract will be construed most strongly against the party who framed it, it may be said to be the primary rule that such contracts are to be most strongly construed against the insurer and in favor of the insured, especially where a forfeiture is involved, so that indemnity will be granted rather than denied. Courts have sometimes been too astute in their search for reasons to maintain the liability of insurance companies in the face of conditions limiting such liability. And yet a contract of insurance in this regard is no different from other contracts; and the functions of courts is to construe them, not to make them. In the absence of statutory provisions to the contrary, insurance companies have the same right as individuals to limit their liability, and to impose whatever conditions they please upon their obligations not inconsistent with public policy; and the courts have no right to add anything to their contracts, or to take anything from them. Though the contracts contain harsh and onerous conditions, which perhaps a court of equity might not enforce, yet there is no compulsion, either legal or moral, on parties to deal with insurance companies upon the basis of such conditions. But the rule is equally well settled that contracts of insurance, like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used, and if they are clear and unambiguous, their terms are to be taken and understood in their plain, ordinary, and popular sense. The rule of strict construction does not authorize a perversion of language, or the exercise of inventive powers for the purpose of creating an ambiguity where none exists, nor does it authorize the court to make a new contract for the parties or disregard the evidence as expressed, or to refine away terms of a contract expressed with sufficient clearness to convey the plain meaning of the parties, and embodying requirements, compliance with which is made the condition to liability thereon."

It seems to us that it would be a "perversion of language" to ignore the plain and unambiguous provisions of the policy in this case by awarding plaintiff judgment for the loss of a hand by severance at or above the wrist, when in fact the whole hand, though materially impaired, less two fingers, is physically attached to the arm.

A policy of the kind we are here dealing with was construed in Metropolitan Casualty Ins. Co. v. Shelby, 116 Miss. 278, 76 So. 839. The court therein enforced the policy provisions as written. We quote the syllabus, viz: "Under an accident policy providing a specific indemnity if insured should sustain the loss of a hand by severance at or above the wrist, an injury to one of his hands whereby he lost the use of the hand to a great extent was not within such provision of the policy, as 'severance' means the removal of anything, the act of severing or dividing or separating, the state of being severed or separated, or the state of being disjoined or separated."

The Supreme Court of Oklahoma, in Great Northern Life Ins. Co. v. Tulsa Cotton Oil Co., 182 Okl. 107, 76 P.2d 913, likewise construed a policy containing the same provisions. It was said therein: "Where the insurance contract specifically provides that the loss of the hand must be by dismemberment between the wrist and elbow joints, the plain provisions of the contract will be upheld and enforced by the court, and the showing of any injury less than that will not suffice to bring the injury within such provision."

Numerous cases are cited by the court from other previous decisions which support this holding. The overwhelming weight of authority supports this interpretation of the policy provisions such as we are now considering. The question does not appear to have been passed on by any appellate court in Louisiana.

The expression "loss of use of a hand" from trauma is a relative term, the establishment of which must depend upon testimonial proof. Judges, doctors and laymen, weighing the same evidence, may differ in opinion as to whether the use of a hand has, for all practical purposes, been

destroyed by physical injury, but they will not and cannot differ in opinion as to whether a hand's usefulness has been totally destroyed because severed from the arm at or above wrist joint. Doubtless it was out of a desire to make certainty more certain that all or nearly all present day policies carry the same stipulations as does the policy before us. Experience likely dictated to insurers the need and necessity for the use of language descriptive of dismemberments over which there could not reasonably arise any doubt.

Being of the opinion that the judgment appealed from is correct, it is affirmed with costs.