Alleging that an airplane owned by plaintiffs had been wrecked and "totally destroyed" and that defendant had issued a policy of insurance covering any loss or damage to their airplane "except damage due to crash," plaintiffs filed this suit for $1,000.
Defendant filed a plea of vagueness and an exception of no cause of action. After plaintiffs had amended their petition, defendant answered, admitting the issuance of the policy, but denied that its provisions covered the crash damage suffered by the airplane.
From a judgment against it in the amount of $950, defendant prosecutes this appeal.
The facts surrounding the damage sued upon are not in dispute. One James Milton Carter — who held no pilot's license from the Civil Aeronautics Authority or otherwise — left the Riverside Airport in Shreveport, Louisiana, on the morning of October 1, 1947, for a cross country flight. The plane he used was owned by plaintiffs and insured by defendant. In a forced landing attempt near Waskom, Texas, the rear wheel failed to clear a pasture fence. Fortunately, the pilot was uninjured, but the plane was almost totally destroyed. No fire followed.
The insurance policy was introduced in evidence and showed that plaintiffs had paid no premium for "crash" insurance. However, plaintiffs' counsel contends that under the peculiar wording of the policy, defendant is liable for any crash damage when such crash was not followed by fire.
Pertinent provisions of the policy are as follows:
"Coverage B — Crash.
"To pay for any loss of or damage to the aircraft:
"(1) during flight due to collision with ground, water or other object and fire following said collision;
"(2) or due to stranding or sinking or to towing following a forced landing on water;
"(3) also disappearance if the aircraft is missing and not reported for sixty days after commencing flight;
"but only for the amount of each separate loss when determined, in excess of the deductible sum or the percentage of participation, if any, stated in Item 3 of the Declarations." (Italics ours.)
Because the policy makes defendant liable for all damages to the plane, except damage due to crash as defined, it becomes necessary to decide whether defendant *Page 378 would have been liable had plaintiffs paid premiums to include crash protection as defined in Coverage B above quoted.
Our interpretation of paragraph 1 of the above quoted provision is that defendant would have been liable for the damage due to young Carter's crashing of the plane had plaintiffs paid the additional premium and been in a position to claim the benefit of Coverage B defined above. We think it evident that the words, "and fire following said collision" constitute an additional liability upon the company issuing the policy, and, under the provisions of this paragraph 1, as soon as the plane collided with the "ground, water or other object" and suffered damage, defendant became responsible for the damage done up to that instant, and if fire should follow, they are likewise responsible for the fire damage. This interpretation would be particularly logical when considering that paragraph 1 was designed to insure the airplane in the event it was forced down over water. It would be indeed an unusual case for an airplane, upon crashing into a lake to be consumed by fire and yet under the interpretation of the policy contended for by plaintiffs, the plane which suffered damage "during flight due to collision with * * water" would not be covered unless there was "fire following said collision."
The construction that plaintiffs give the crash coverage clause above quoted, would amount to transferring the crash coverage clause into a clause protecting the owner against damage caused by fire following a crash or collision, and this is plainly not a fair interpretation of the meaning of the clause when considered as a part of the policy attached to plaintiffs' petition.
In an attempt to make the defendant liable under the theft provision of the policy, plaintiffs alleged that young Carter had taken the plane from their hangar and was operating it without the permission of its owners or their authorized agent. The record discloses that plaintiffs operate a flying school and private plane charter business in a hangar at the Riverside Airport. In the same building there is an ornamental iron works business operated by Mr. T. H. Hardie. Mr. Hardie was a former co-owner of the airplane, but had disposed of his interest to the plaintiffs several months prior to the day young Carter wrecked it. Mr. Hardie was still friendly with the plaintiffs and occasionally gave assistance to their students and other customers. He was not an employee and his business had no connection with plaintiffs' business except that incidental to joint occupancy of the same building (with no partition between the space occupied by the two tenants).
Some time late in September, 1947, James Milton Carter came to this hangar and asked Mr. Bailey, one of the plaintiffs, about renting an airplane. It was late in the afternoon and the weather was not favorable and Mr. Bailey suggested that Carter come back at a later date. Carter returned on the morning of October 1st. None of the plaintiffs were present and Carter inquired of Mr. Hardie as to Bailey's whereabouts. Hardie informed Carter that Bailey would not be down until afternoon. Carter told Hardie he wished to fly to Texarkana, Arkansas, and Hardie assisted him in servicing the plane, preparatory to taking off. Before taking to the air, Carter left a piece of paper with his name, and, after crashing the airplane near Waskom, Texas, returned to the hangar and made a full report of the accident, its location, etc. He went with one of the plaintiffs to the scene of the accident.
No criminal action of any sort was instituted or even suggested against Carter. While the record leaves some doubt as to whether there was a misunderstanding between Hardie and Carter at the time Carter left in the airplane, it is clear in our minds that the circumstances cannot fairly be construed as being a case of theft.
We agree with the principle of law that insurance policies should be liberally construed, particularly when a liberal construction is needed to carry out the obvious intention of the parties. We likewise concede the rule that a contract will be construed more strictly against the party who framed it. Muse v. Metropolitan Life Insurance Company, La. App., 191 So. 586. But, as stated in that case, the rule is equally well settled that contracts of insurance, *Page 379 
like other contracts, are to be construed according to the sense and meaning of the terms which the parties have used.
The judgment appealed from is reversed and judgment is now rendered rejecting plaintiffs' demands, at their costs.