**PHOENIX INDEMNITY COMPANY and Joseph Jurisich Marine Service, Inc., Appellants,**

v.

**MARQUETTE CASUALTY COMPANY, Appellee.**

No. 19493.

United States Court of Appeals
Fifth Circuit.

July 24, 1963.

Rehearing Denied Oct. 16, 1963.

Peter H. Beer, Richard B. Montgomery, New Orleans, La., for appellants.

James J. Morrison, New Orleans, La., for appellee.

Before RIVES, CAMERON and BELL, Circuit Judges.

1. Being the same company as Phoenix Assurance Company of New York, the

CAMERON, Circuit Judge.

At 7:45 P.M., April 21, 1955, Marcus L. Givens received severe personal injuries when the automobile he was driving was sideswiped by a dragline owned by and being moved under the supervision of Joseph Jurisich Marine Service, Inc., hereinafter sometimes called Marine Service, Inc. The dragline which struck him was loaded on a truck owned and being operated by Folse Drayage Company, and the dragline's tracks (which occasioned the damage) protruded two feet seven inches beyond each side of the truck's platform or bed.

Givens sued to recover for his injuries, naming Folse Drayage Company, Inc., its insurer, and Marine Service, Inc. and Phoenix Indemnity Company,[1] its insurer, as defendants. After Marine Service, Inc. and Phoenix had, pursuant to permission granted by the court below, filed a third party complaint against appellee Marquette Casualty Company alleging that Marquette was an insurer of Marine Service, Inc., Givens filed a supplemental complaint bringing in as additional parties defendant Joseph Jurisich, Marquette Casualty Company and Maryland Casualty Company, claiming damages for his injuries against them in addition to the original defendants.

At the beginning of the trial of Givens' action for damages, the court below severed the third party action between Marine Service, Inc., Phoenix and Marquette so as to eliminate this acrimonious controversy from the trial of Givens' damage suit. The final judgment entered in Givens' case, reciting that it was entered upon the motion of Marine Service, Inc., Phoenix and Marquette, reserved this controversy for future action in these words:

"It is further adjudged that the third party complaint of Joseph Jurisich Marine Service, Inc. against Marquette Casualty Company and the cross claim of Marquette Casualty Company against Phoenix Indem-

appellant here, the name having been changed in the interim.

nity Company be reserved for a separate trial as to such matters and that the fact that Marquette Casualty Company is not made a judgment debtor will not prejudice in any way the rights of third party complainant Phoenix Indemnity Company against the said Marquette Casualty Company."

The court, in the Givens case, also eliminated by summary judgment, Joseph Jurisich as an individual and as one of the partners of Joseph Jurisich Construction Company, in addition to Maryland Casualty Company.[2]

The portion of this civil action involving the liability of Marine Service, Inc. and its insurers to Givens proceeded to trial and resulted in a verdict for $80,000.00 in his favor and against Folse and its insurer and against Marine Service, Inc. and Phoenix, its insurer; and this Court affirmed that judgment, Phoenix Indemnity Company et al. v. Givens, 1959, 263 F.2d 858. Many of the complicated facts involved in the severed portion of the civil action now before us will be found in our opinion in the above case.

The attorneys for Phoenix and for Marquette appeared and participated in that trial, supporting the defenses offered on behalf of Joseph Jurisich Marine Service, Inc.; and each of said companies filed a separate motion for judgment notwithstanding the verdict or for new trial and participated in the hearings thereof, the motions being denied May 15, 1958 by the trial court.

The judgment in Givens' favor was paid in full by Folse and its insurer who paid $24,868.67, and by Phoenix, as insurer of Marine Service, Inc., which paid the sum of $55,131.33.

This action by Joseph Jurisich Marine Service, Inc. and Phoenix seeks to recover all or a portion of the monies so paid out by Phoenix, and any other amount which may be proved to be due it, by reforming Marquette's policy No. CA 1011, which was in effect from 12:01 A.M. April 22, 1954 to 12:01 A.M. April 22, 1955.[3]

The controlling facts upon which the court below, sitting without a jury, rendered judgment in favor of Marquette will be stated with as much brevity as their intricacy will permit. In the months preceding October, 1954, Joseph Jurisich was engaged in a number of businesses and he carried liability insurance covering each of the several operations with one or more of a number of different insurance companies. Most of this coverage he obtained from Martin-Lebreton Agency (hereinafter sometimes known as Martin), which agency was the general sales agent of several companies, including Phoenix Indemnity Company, the appellant, and Marquette Casualty Company, the appellee, and Maryland Casualty Company. It was authorized to sign and deliver policies, as well as endorsements or riders changing or supplementing their terms.

Under the arrangement existing for some years between him and the insurance agency, Jurisich left to the agency complete authority to place his policies with any insurance company it should select. Marine Service, Inc. was, at the time of the Givens injury, insured under a policy of general liability insurance by Phoenix Indemnity Company, which was issued in January of 1955. That policy was a renewal of a policy theretofore in

2. In its findings of fact here, the court below stated that this summary judgment had been granted because of its finding that the dragline which caused the injury had been transferred by the partnership Joseph Jurisich Construction Company to Joseph Jurisich, and by him to Joseph Jurisich Marine Service, Inc., appellant here, at the time this corporation was formed on October 15, 1954, some six months prior to the time the personal injuries were received by Givens.

3. The named insureds in Marquette's policy were "Joseph Jurisich, Jr. d/b/a Joseph Jurisich Transfer and as *Joseph Jurisich Marine Service*, and Joseph Jurisich, Jr. and Joseph Larson, a partnership d/b/a Joseph Jurisich Motor Freight." [Emphasis added.]

force covering several of the businesses Joseph Jurisich was conducting as an individual. The general liability policy was issued by Martin to Marine Service, Inc. as insured solely upon verbal instructions given to Martin by Jurisich at or about October 15, 1954, the time when the several properties of Jurisich were transferred to the newly-formed corporation, Marine Service, Inc.

Marquette had carried comprehensive automobile liability policy No. CA 1011, which was, under its terms, in force from 12:01 A.M. April 22, 1954 to the same hour April 22, 1955. In said policy, the name of the insured was carried as shown in Footnote 3 *supra*. The policy and a large number of endorsements had been signed by Martin and in them were listed more than forty motor vehicles as embraced within the coverage.

Maryland Casualty had kept in force a policy written by Martin covering Joseph Jurisich in his partnership with another under the name of Joseph Jurisich Construction Company. Prior to October 15, 1954, the dragline which occasioned the injury was the property of this partnership.

As of October 15, 1954 a corporation was formed in which all of the stock except qualifying shares was issued to and was thereafter owned by Joseph Jurisich individually. All of the properties and the business operations theretofore conducted by Jurisich under the several names appearing above were then conveyed to the new corporation Joseph Jurisich Marine Service, Inc., which continued their operation.

Jurisich promptly telephoned George Martin, senior member of the partnership Martin-Lebreton Agency and in active charge of its business, that he had incorporated his various operations into the new corporation and he requested that all of the insurance be changed to the corporation. Martin replied that this would be done; and he testified that he gave notice of the change to each of the insurance companies involved, and that he instructed one of his clerks to make the necessary changes in the outstanding policies by issuing endorsements to cover each of them. Solely because of the failure of Martin's clerk to issue the necessary endorsements or new policies, no actual changes were made in any of the policies outstanding to Jurisich and his various business operations until their respective expiration dates.

As stated, the policy of Phoenix which was in effect October 15, 1954 covered several of the businesses of Joseph Jurisich in the same manner as the policy of Marquette. The Phoenix policy expired January 19, 1955. Without further word from Jurisich than that given verbally on or about October 15, 1954, the Phoenix policy was, upon its expiration, renewed by Martin, so as to show Joseph Jurisich Marine Service, Inc. as the sole insured. At the time of the collision resulting in the judgment in favor of Givens, therefore, the policy of Phoenix named the new corporation as the insured. Phoenix admitted its liability under the policy and it defended the suit and paid $55,131.33 of the judgment.

As shown above, the Marquette policy in force when the new corporation was organized did not expire until 12:01 A.M. March 22, 1955, less than twenty-four hours after the Givens accident had occurred. Shortly after the collision occurred, Martin issued Marquette's renewal policy effective at 12:01 A.M. March 22, 1955, which named the new corporation as the sole insured. This renewal was issued entirely as the result of the verbal instructions which had been given Martin by Jurisich on or about October 14, 1954.

The foregoing facts appear from the record without substantial dispute, and the findings of fact entered by the court below are in practical accord. The crucial facts may be thus summarized:

The dragline involved in this collision was owned by Marine Service, Inc. at the time of the collision and had been so owned for several months. It had

been loaded on Folse's truck under the supervision of an agent of Marine Service, Inc. and was being transported under the sole supervision of an agent of the corporation. Joseph Jurisich, as an individual, as a partner, or as a person doing business under the trade names in the policies of insurance in effect prior to October 14, 1954, had, at the time of the accident, no title to the dragline or of any of the properties formerly owned by the said businesses, except such as arose from ownership of substantially all of the stock of Marine Service, Inc. The transfer of this property and ownership of the businesses had been made known to the managing partner of the insurance agency on or about October 15, 1954, and that partner agreed to change the names of the insureds to Marine Service, Inc., and he issued instructions to his employees that the requisite changes be made in the policies then existing, including Policy No. CA 1011 of Marquette.

■ There is no doubt, therefore, that it was the intent of the parties long before liability to Givens arose that Marquette be liable under the terms of Policy No. CA 1011 for personal injuries arising from the ownership of the dragline which occasioned the personal injuries to Givens. That intention was not expressed in writing by endorsement on the existing policy or issuance of a new policy solely because of the negligent failure of the insurance agency to act upon instructions received by it from the authorized agent of Marine Service, Inc. And we can perceive no legal impediment in the way of the entry of a judgment by the trial court to effectuate that intention.

The court below thought that the appellant could not prevail because "The dragline can only be covered by the policy (CA–1011) if there was an endorsement issued which would have included the equipment owned and operated by Joseph Jurisich Marine Service, Inc. within the coverage afforded by the said policy." We do not think that the mere failure of Marquette's agent to issue the endorsement pursuant to its agreement bars the right of appellants to recover whatever amount Marquette would have been obligated to pay if the endorsement had been properly issued. The trial court should, in our opinion, have reformed the Marquette policy so as to show Joseph Jurisich Marine Service, Inc. as the insured on and after October 14, 1954, and should have entered judgment against the insurer for the amount due under the terms of said policy and under the situation existing between the two insurance companies.

This result follows, we think, from the decisions of the courts of Louisiana and those of this Circuit and the law generally. And it follows whether the reformation is based upon waiver or estoppel or upon the undisputed proof that the failure to name the assured accurately resulted solely from the negligence of Marquette's authorized agent.

Cases bearing on the subject are legion, but it is necessary to cite only a few of them. First, to consider some of the cases the court below relied upon. The case of Isadore v. Washington, Etc. Insurance Co., C.A.La.1954, 75 So.2d 247, is cited in support of the court's conclusion that a court's power to reform a contract "does not extend to changing or modifying a written contract." A reading of the case demonstrates that it does not sustain that view. The company had claimed that it mailed an endorsement withdrawing coverage on an insured building. The holding of the appellate court merely agreed with that of the lower court, that the insured had not received the endorsement and it had affirmed the lower court's holding that the company could not withdraw coverage without the consent of the insured.

■ The trial court's basic conclusion of law against appellants here is that "A change or modification of a policy of insurance in the form of the addition of an assured must be in writing

in order to be valid." [4] The statute does not apply to the addition of an insured any more than to any other changes or modification. A reading of the cases simply reflects that they do not support the trial court's conclusion [5] based, presumably, on a literal application of the statute's provisions.

Adalian's was a case by this Court dealing with Florida law. Laurent holds that the agent of the company there covered could not waive any provisions of the policy. Muse deals with whether a loss of a hand by severance comes within the policy terms. Kennedy involves only a construction of the meaning of the policy as applied to the facts of that case. Carruth declares the company not liable where the insurance was procured by fraud.

The court below cites four cases [6] for the holding that, in order to establish a cause of action for reformation of a contract, the evidence must be clear, convincing and satisfactory that the instrument does not conform to the intentions of the parties. Nobody denies this general principle. We have read the cases and find nothing in them that tends to establish that this principle is decisive on the facts before us.

On the crucial point here, the evidence is all one way and bears repeating here: Whether the parties agreed prior to the Givens' accident that, after October 14, 1954, the insured under the Marquette policy was the new corporation, Joseph Jurisich Marine Service, Inc. Jurisich testified categorically that he informed the managing agent of Martin-Lebreton Agency that all of the properties of all of his businesses had been conveyed to the new corporation, and requested that the insurance policy in question be changed to conform with this changed situation. Martin, partner in the insurance agency and the ranking officer in its operation, testified that Jurisich did telephone and give him this information about the time the new corporation was formed, that he agreed to make the requested changes, that he passed the information along to his clerical force with the direction that proper endorsements be written out and delivered to the insured to memorialize the changes; and that it was his recollection that he notified each of the companies involved. Whether he did notify Marquette and the other companies is of no moment. The Martin Agency was the general agent for the sale, issuance, modification and servicing of all policies for Marquette which met with the agency's approval; the agency had all the necessary blank forms and full power to agree to the requested change and to execute all papers to effectuate it.

Moreover, the proof showed without contradiction that all of the operations described in the Marquette Policy No. CA 1011 were transferred to the new corporation October 15, 1954; that they were managed by the same human beings and that the activities and operations were performed by the same persons and with the same equipment. The risk was not changed in any manner. The true ownership of the properties was, in substance, the same, and there was nothing in the proof which argued in any degree against the perfect fairness of the re-

**4.** The court cites Louisiana Insurance Code, LSA–R.S. 22:628 as the chief basis of this holding:

"§ 628. Must contain entire contract. No agreement in conflict with, modifying, or extending the coverage of any contract of insurance shall be valid unless in writing and made a part of the policy."

**5.** The cases cited by the court are: Adalian's Inc. v. Fidelity-Phoenix Fire Insurance Co., 5 Cir., 81 F.2d 226; Laurent v. Unity, Etc. Co., 189 La. 426, 179 So. 586; Muse v. Metropolitan Life Insurance Co., La.App., 191 So. 586, Affirmed, 193 La. 605, 192 So. 72, 125 A.L.R. 1075; Kennedy v. Audubon Insurance Co., La. App., 82 So.2d 91; Carruth v. State Farm Mutual Automobile Ins. Co., La. App., 113 So.2d 56.

**6.** Southwest Gas Producing Co. v. Hattie Bros., 230 La. 339, 88 So.2d 649, 654; Merritt v. Hayes, 237 La. 557, 111 So.2d 771; Standard Oil Co. of Louisiana v. Futral, 204 La. 215, 15 So.2d 65; Magee v. Booty, La.App., 47 So.2d 379.

quested change in name. Moreover, all such questions are foreclosed by the undisputed proof that the requested change was agreed to by Marquette's agent having authority to make the agreement. It is not necessary to resort to the consideration of such proof as that to the effect that both the Phoenix Policy and the Marquette policy were changed to the new corporation without any further word than that which was given on or about October 15, 1954 (thus arguing that the employees of the Insurance Agency must have made a written memorandum of the requested modification at the time it was made); that all premium payments thereafter were made by the new corporation to Martin; that Martin determined exclusively how Marine Service's payments were to be applied.

The law which furnishes the conclusion to be reached upon these undisputed facts is substantially all one way.

■ The recently revised text of American Jurisprudence [7] states the general rule in these words:

"In an action on a contract of insurance, the insurance company is generally considered estopped to deny liability on any matter arising out of the * * * negligence of an agent of the company. If either party must suffer from an insurance agent's mistake, it must be the insurance company, his principal. * * *"

"* * * Similarly, it has been held that the insurer was estopped to set up a breach of the provisions of a policy providing that it should be void if the interest of the insured was other than unconditional and sole ownership, and that no officer, agent, or other representative should have power to waive any provision, where it appeared that in applying for the policy the insure truly stated that his sole interest in the property insured was that of a holder of a sheriff's certificate under a mort-

gage foreclosure sale, but notwithstanding such information the agent carelessly and negligently omitted to state in the policy the nature of the insured's interest." Id. § 1066, page 234.

This same rule is recognized in Louisiana:

"It is an established rule of law in our jurisprudence that 'Either party is always permitted, in a suit between the parties to a contract, to correct any error in the instrument purporting to evidence the contract, so as to make it express truly and correctly the intention of the parties.'" Southwest Gas Producing Co. et al. v. Hattie Bros., 1956, 230 La. 339, 88 So.2d 649, referring to Reynaud v. Bullock, 195 La. 86, 196 So. 29, 34, and State v. Standard Oil Company of Louisiana, 164 La. 334, 113 So. 867.

In Brodie v. Atlas Assurance Co., 1925, 158 La. 695, 104 So. 620, 621–622, the Louisiana Supreme Court held to the same principle:

"There was a complete meeting of the minds on the subject of the insurance and the ownership, and the policies were issued on said agreement.

"The mistake and error committed was on the part of the agent in making out the policy in favor of the person in whose name the business had been formerly conducted, instead of making it in the name of the three owners who alone made the application for the additional insurance. And the same mistake was made in not changing the first policy so as to make it conform to the agreement. * * *

"And a court of equity on a proper case shown will reform a written contract of insurance on the ground of accident, fraud, or mistake. Such mistake, among others, may be one in reference to the amount of insurance, the term and duration of

7. 29A Am.Jur., Insurance, § 1049, page 219.

the risk, the property or interest covered by the policy, or the name of the person insured and the ownership of the property * * * Corpus Juris, Vol. 26, p. 104." [8]

This Court recently (Providence Washington Insurance Co. v. Rabinowitz, 5 Cir. 1955, 227 F.2d 300, 302–303) held that an insurance company is estopped to take advantage of the unilateral mistake of the company's agent, citing Day v. Fireman's Fund Insurance Co., 5 Cir., 67 F.2d 257, and Springfield Fire and Marine Insurance Co. v. Martin, 5 Cir., 77 F.2d 492, from this Court. It also quoted § 504 of the Restatement of the Law of Contracts and 14 R.C.L. § 83 as authority for holding that an agent of an insurance company may correct the policy to conform with the agreement even subsequent to the loss; and see also Home Insurance Co. v. Hightower et al., 5 Cir., 1927, 22 F.2d 882, 62 A.L.R. 620; and State Farm Insurance Co. v. Thompson, and companion cases, 1957, 244 F.2d 291. affirming decision of the United States District Court for the Western District of Louisiana, 145 F.Supp. 473.

The court below held that appellant Phoenix was subrogated to the rights of appellant Joseph Jurisich Marine Service, Inc. and that there was no disability in its right to maintain this action. We agree with these holdings.

There remains only the question of the amount of the recovery, if any, appellant Phoenix Indemnity Company is entitled to have against Marquette Casualty Company. Phoenix contends that Marquette is primary insurer and is liable to it in the full amount of its coverage ($50,000.00), indicating in its brief, however, that it would be content to recover half of its outlay; and Marquette asserts that it is nothing more than excess insurer. The question of the amount of the recovery was not considered by the court below and this question ought to to be submitted first to that court. The judgment appealed from is, therefore, reversed and the case is remanded for further proceedings consist-

ent with this opinion. Costs of this appeal are assessed against the appellee.

Reversed and remanded.

## ON APPELLEE'S PETITION FOR REHEARING AND APPELLANT'S PRAYER FOR A MONEY JUDGMENT AGAINST APPELLEE

PER CURIAM.

It is ordered that the petition for rehearing filed by appellee Marquette Casualty Company be and it is denied; it is further ordered that the prayer of Phoenix Indemnity Company and Joseph Jurisich Marine Service, Inc. for money judgment in their favor and against Marquette Casualty Company be and it is denied.

8. And see also Pope Gammill Lumber Co. et al. v. Zurich General Accident, Etc. Co., 1929, 168 La. 422, 122 So. 278; Monroe Air Park v. American Aviation and General Insurance Co., C.Ap.La., 1949, 41 So.2d 795; Maryland Casualty Co. v. Kramel, C.Ap.La., 1955, 80 So.2d 897; Maggio v. State Farm Mutual Automobile Insurance Co., C.Ap.La., 1960, 123 So.2d 901.