BLANCHE, Judge.
Defendants, Security Insurance Company, The Travelers Insurance Company and Federal Insurance Company (Underwriters), appeal from a judgment in favor of plaintiff, Gulfwide Boat Rentals, Inc., (Gulfwide), decreeing reformation of a marine insurance policy to cover the tugboat, O. L. Kirkpatrick (tug), owned by *797 plaintiff Gulfwide Boat Rentals, Inc. (Gulfwide), despite Gulfwide not being a named insured. We affirm.
This action arises from an accident which occurred on March 31, 1970, between the O. L. Kirkpatrick and another vessel, which accident resulted in damages to the other vessel in the sum of $10,007. 43. Gulfwide paid the other owner in full and sought reimbursement of said sum from Underwriters, less $2,500.00 deductible, as provided for in subject policy dated August 1, 1969. The policy listed the tug as an insured vessel, but also listed its owner as Gulf Star Marine Services, Inc. (Gulf Star). Gulfwide also joined as defendant The Violet T. Scott Agency, Inc., Berwick, Louisiana (Agency). Judgment against Agency was sought in the alternative on the premise that if the tug was not covered by subject policy, its omission therefrom was due to Agency’s negligence.
In a well reasoned written opinion, the trial court concluded the policy should be reformed to include coverage of the tug because Underwriters knew or should have known that Gulfwide was the tug’s actual owner and because the risks taken by Underwriters were identical whether the tug belonged to Gulf Star or Gulfwide.
Certain relevant facts are undisputed. Gulfwide is a corporation whose entire stock is owned by Carroll Boyne, his brother, Edward J. Boyne, Jr. and F. W. Las-seigne. These same parties are sole stockholders in a related corporation known as Caribbean Towing & Salvage Company, Inc. (Caribbean). Gulfwide and Caribbean are primarily controlled by the Boyne Brothers. The two corporations operate as a single undertaking. They share a single office and have the same telephone number and post office box address. They interchange employees to the extent that employees rarely know whether they are performing duties for Gulfwide or Caribbean. The two firms were incorporated to engage in the business of marine towing, particularly in the oil industry.
Prior to August 1, 1969, Gulfwide had been a dormant corporation which had done no business and owned no vessel for five or six years. Gulfwide had, however, contracted for the purchase of the O. L. Kirkpatrick which was under construction. Gulf Star, whose principal officer is O. L. Kirkpatrick, who bears no relation to the Boyne Brothers, is a well known, successful and respected vessel broker, owning some vessels of its own. Gulf Star also charters numerous vessels which it obtains from sub-charters. It insured its own as well as sub-chartered vessels under a fleet policy issued in the name of Gulf Star. Gulf Star had such a policy with Underwriters on August 1, 1969. The policy named Gulf Star as insured, and also named as insureds owners of such vessels as Gulf Star had under sub-charter.
Some time prior to August 1, 1969, Carroll Boyne voluntarily canceled the insurance on the Dolly Ann and Edward B. Boyne (vessels owned and operated by Caribbean) because of some dispute with their then insurer. It developed the Boynes could not obtain new coverage because of their unfavorable claim experience, except at rates they considered excessive. Without insurance, the Boynes could not charter their vessels in the oil industry. To solve this dilemma, an agreement was reached by the Boynes and Gulf Star whereby the Dolly Ann and Edward B. Boyne would work through Gulf Star on a brokerage commission of 5% for all work obtained for the vessels by Gulf Star. The Boynes reserved the right to work the vessels on their own if and when they could, without any obligation for a broker’s fee for such service. The two vessels were carried on Gulf Star’s fleet policy with Underwriters naming Gulf Star and Caribbean as assured. The policy also included numerous other listed vessels together with Gulf Star, their owners and certain other interested parties as named insureds. From time to time, the policy was endorsed by Underwriters to add the names of various interested parties as insureds.
*798 Gulf Star’s insurance was handled by The Violet T. Scott Agency, through its representative, H. S. Hover. Hover conceded he is merely a broker; that he has no authority to sell or bind marine insurance, and that he merely acts as an intermediary offering business to a general agency possessing underwriting authority. When approached by O. L. Kirkpatrick to include the Dolly Ann and Edward B. Boyne in Gulf Star’s fleet policy, Hover referred the matter to William H. McGee and Company, general agents, through its Vice President, John L. Barnes, who was in charge of McGee’s New Orleans, Louisiana and Houston, Texas offices. Based on representations made by Hover, and a trip to Morgan City by Barnes to verify certain local conditions, Barnes insured the Dolly Ann and Edward B. Boyne under Gulf Star’s then existing fleet policy. The O. L. Kirkpatrick was added to the policy by endorsement on September 22, 1969, effective August 16, 1969, loss, if any, was made payable to Gulf Star and the Morgan City Bank and Trust Company.
The Boynes decided to finance the insurance premiums on the O. L. Kirkpatrick on their own rather than through Gulf Star as was the case on the other two vessels. They arranged to do so through the Morgan City Bank and Trust Company. On November 4, 1969, the Bank wrote McGee & Company, New Orleans, advising that the Bank had financed the policy dated August 1, 1969, numbered CH286619 (the policy endorsed to include the O. L. Kirkpatrick), the named insured being Gulfwide Boat Rentals, which policy was issued through the Scott Agency, Berwick, Louisiana.
On December 1, 1969, the O. L. Kirkpatrick was involved in an accident through the fault of its operators. The accident caused damage to a barge and a grain elevator. Claim was made by means of a letter from the Scott Agency, through its Betty Shaw, dated January 5, 1970, to Barnes and the McGee Agency, New Orleans. The letter enclosed the statement of Captain Rowan regarding the circumstances of the accident. It also enclosed a copy of a telegram from Farmers Export Company to Caribbean Towing and Salvage Co., dated December 2, 1969, advising that Farmers was holding Caribbean responsible for damage to its property in the accident of December 1, 1969. In addition, it enclosed copies of telegrams from Point Landing, Inc. to Gulfwide Boat and Rental, Inc., dated December 3 and December S, 1969, advising that Gulfwide was being held responsible for damage caused to Point Landing’s property by the O. L. Kirkpatrick in the accident. This claim was paid by Underwriters with Barnes’ approval.
The loss at issue here occurred March 31, 1970. On learning that the O. L. Kirkpatrick was owned by Gulf wide, which was not named as an insured under the policy, Underwriters denied coverage, canceled Gulf Star’s policy and returned plaintiff’s premium.
Underwriters’ answer to Gulfwide’s petition asserts lack of coverage solely on the grounds that Gulf wide is not named as an assured under the policy, and also because the risk undertaken was operation of the O. L. Kirkpatrick under Gulf Star’s supervision using Gulf Star’s crews. Underwriters also contend that if coverage existed, it was terminated pursuant to a policy provision providing the policy shall become null from the date of any change in the assured’s interest or any change in the management of an insured vessel.
Appellants argue that the trial court erred: (1) In holding that the Scott Agency was the agent of Underwriters, consequently Hover’s knowledge was attributable to Underwriters; (2) In creating or extending coverage by estoppel where no coverage existed in fact; (3) In reforming a policy where there was no distinct agreement to insure the risk which was omitted by the underwriter either by fraud or mistake; (4) In reforming the policy despite misstatement and concealment of material facts on the part of the insured, and (S) In *799 allowing recovery to an insured despite failure to establish that the insured was legally liable to pay damages to a third party.
Hover testified in essence that he had never heard of Gulfwide, but was familiar with Caribbean and the Boyne Brothers. He understood that when Kirkpatrick approached him for insurance, Gulf Star would operate its own boats, bareboat charter additional vessels, and also that Gulf Star would be in complete control of all operations, and furnish its own crews for all boats. Hover conveyed this information to McGee & Company through Barnes, with whom Hover had previous dealings. He also stated that Barnes expressed interest in writing the coverage, and made preparations to do so.
By way of deposition, Barnes testified that he agreed to write the coverage based on Hover’s representation that Gulf Star would be in complete control of the operation and furnish its own crews, or crews approved by Captain Milton Vining, an experienced Gulf Star employee. Barnes visited Gulf Star’s office in Morgan City, discussed the matter with Kirkpatrick, and also went to Berwick and spoke to Carroll Boynes. Subsequently the policy was written on Gulf Star’s fleet.
We first conclude that the Scott Agency was not the agent or representative of Underwriters as held by the trial court on authority of Foster v. Nunmaker Discount Co., La.App., 201 So.2d 215, and LSA-C.C. art. 3017. Counsel for Gulfwide argues further that Scott was Underwriter’s agent pursuant to Urania Lumber Co. v. Insurance Co. of North America, La.App., 177 So.2d 640, and Phoenix Indemnity Co. v. Marquette Casualty Co., 5 Cir., 320 F.2d 486.
Foster, above, erroneously relies on Article 3107, which relates to brokers in general and provides that the obligation of a broker is similar to that of an ordinary mandatory with the added obligation of owing the same duty towards all parties concerned. However, insofar as is concerned, the Insurance Code, LSA-R.S. 22:1162, defines a broker as one who, for a commission or brokerage fee, acts or aids in negotiating contracts of insurance, or in placing risks or soliciting or effecting insurance as an agent for an insured or prospective insured other than himself, and not as a licensed agent of an insurer, and not as an insurance solicitor employed by a licensed agent. Under the above statutory definition, it is clear that the Scott Agency was not the agent of Underwriters. The Scott Agency was admittedly not a licensed agent of Underwriters. Neither was Scott Agency a solicitor employed by a licensed agent. Urania Lumber Company and Phoenix Indemnity Company, relied upon by Gulfwide, are factually inapposite. In both instances, it appears, or is inferred, that the “Agent” was indeed the licensed local agent of the insurer.
The record establishes that Underwriters were misled as to the identity of the ownership of the O. L. Kirkpatrick. It is equally clear that Gulf Star misrepresented to Underwriters that the O. L. Kirkpatrick was under bareboat charter by Gulf Star.
In our judgment, Underwriters’ knowledge, arising from the letter of Morgan City Bank, dated November 4, 1969, and from the claim submitted by Scott Agency on January 5, 1970, with enclosures showing demands on Gulfwide, is more properly a matter of estoppel than ground for reformation.
We are also of the view that the above documents were amply sufficient to put Underwriters on notice that Gulfwide was an interested party against whom demand had been made as a result of an accident covered by the policy. As contended by Gulfwide, the circumstances clearly required further investigation on the part of Underwriters. Having failed to investigate further, Underwriters are deemed to have acquiesced in continuing coverage knowing that Gulfwide was an interested party.
*800 It remains to be seen whether the misrepresentations noted bar Gulfwide from claiming estoppel on the ground that such misrepresentations increased the risk or resulted in coverage not intended by Underwriters.
It is clear beyond doubt that Underwriters intended to insure and did insure the O. L. Kirkpatrick against the identical type of risk involved in subject accident. It is contended, however, that the risk undertaken was that of operation by Gulf Star through its management, supervisory personnel and crews, all of which had been verified by Barnes, and was the precise risk contemplated at the inception of coverage. The record, however, does not support this position. In this regard, we note the following in Barnes’ deposition:
“Q Was it then your understand, sir, that all vessels were covered heretofore by either through ownership or bare boat charger under the operational control of Gulf Star Marine?
A That’s correct.
Q And whose crews would man these vessels, sir?
A The crews were to be checked by Mr. Vinning of Gulf Star Marine. If they were not satisfactory, Gulf Star Marine would hire their own personnel.
Q These were to be Gulf Star’s crews though ?
A Gulf Star’s crew or the crew that was presently on the vessel.”
We find therefore that William H. McGee and Company, particularly its Vice President, Barnes, was Underwriters’ agent and, as such, possessed authority to accept and did accept the risk attending operation of any insured vessel by a crew approved by Gulf Star. In this regard, the testimony of O. L. Kirkpatrick shows his approval of Boynes’ crews operating the vessel in question. Kirkpatrick unequivocally testified he knew the Boynes brothers and their crews, he considered the Boynes to be competent boat operators, and also deemed Boynes’ crews as good as anyone elses. The record overwhelmingly preponderates in favor of the conclusion that operation of the tug by Boynes’ crews did not increase to any extent whatsoever the risk intended to be assumed by Underwriters.
We find that Underwriters’ agent, McGee and Company, through Barnes and other employees, acquired knowledge of Gulfwide’s interest more than three months prior to subject accident, which afforded ample time for investigation and cancellation in the event Underwriters did not elect to insure the tug under Gulfwide’s ownership. Such prolonged inaction, under the circumstances, estops Underwriters from denying coverage of Gulfwide’s subsequent claim. Richard v. United States Fidelity & Guaranty Company, 247 La. 943, 175 So.2d 277; Urania Lumber Co. v. Insurance Company of North America, La.App., 177 So.2d 640; Phoenix Indemnity Co. v. Marquette Casualty Co., 5 Cir., 320 F.2d 486.
Underwriters’ contention that the policy was nullified by a change of ownership and management after the policy was written, as provided for in the contract, is without merit. We initially note there was in fact no change in management. Barnes agreed to operation by any crew approved by Gulf Star. Gulfwide’s crews were approved by Gulf Star’s President, Kirkpatrick. Having knowledge that Gulf Star, the named insured, was not the owner, and failing to take action on such information, Underwriters are estopped from canceling the policy because of this difference in proprietorship.
Whiteman v. Rhode Island Ins. Co., D. C., 78 F.Supp. 624, cited and relied upon by Underwriters in support of its plea of nullity based on a change of ownership and management, is factually inapposite. Whiteman involved the sale of a vessel on or before a certain date. The vendee took immediate possession and commenced operation of the vessel as his own prior to the actual sale, which was to take place ten days later. The sale did not take place as scheduled. The accident occurred 23 days *801 after the vendee took possession. In the meantime, the vendor had written the insurer requesting cancellation of the insurance as of the anticipated date of sale. Pursuant to said request, the policy was canceled on the anticipated sale date, which was 13 days before the accident. In White-man, it was clear that an actual change in management had occurred; that for all practical purposes ownership had been transferred, and the policy was actually canceled before the accident.
In brief and oral argument before this court, Underwriters for the first time contend there can be no recovery by Gulf-wide because the record contains no proof of Gulfwide’s fault and consequent liability for the accident in question. This defense was not plead in answer or put at issue upon trial. The record before us contains evidence from which it may reasonably and justifiably be inferred that fault was conceded, and that the insurer elected to defend solely upon the issues of coverage. Having made this concession, the insurer is bound thereby.
The judgment of the trial court is affirmed at appellants’ cost.
Affirmed.